Keating, J.
In response to the deeply felt needs of the community, our State Legislature enacted two statutes (L. 1965, ch. 327, eff. Sept. 1, 1965; L. 1965, ch. 372, eff. July 1, 1965) proscribing the dissemination, to infants under 17 and 18 years of age' respectively, of materials obscene as to such infants, though not necessarily obscene as to the adult community.
The statutory scheme is no broader than necessary to reach the desired end. The adult community remains free to read what it wishes. Dissemination of material, obscene only as to children, is proscribed only as to children. The unconstitutional infirmity pointed out in Butler v. Michigan (352 U. S. 380) is overcome. The adult population is not restricted to reading only that which is fit for children.
In Bookcase, Inc. v. Broderick (18 N Y 2d 71), we upheld the Legislature’s power to employ variable concepts of obscenity. The questions not then being presented, we left it for another day to determine whether the statutes, in their application, squared with the mandates of the First and Fourteenth Amendments to the Federal Constitution. The present case poses these questions with regard to the statute effective on July 1,1965 (Penal Law, § 484-i).
On July 19,1965, at the instigation of Operation Yorkville, 17-year-old Anthony Sciacovelli approached the appellant’s cigar store, examined an outside stand containing “girlie” magazines, selected two and entered the store. Appellant looked at them, priced them at $2.25 and sold them to Sciacovelli, who thereafter departed. Once outside, Sciacovelli wrote his name and the time and place of purchase on an inside cover without further examining the magazines ’ contents.
Candid is the name of the magazine which appellant sold to Sciacovelli and for the sale of which he was subsequently convicted pursuant to section 484-i of the Penal Law (sale or delivery of pornographic material to minors under the age of 18). Candid’s cover shows a girl seductively posed beside a couch wearing the skimpiest of undergarments. In addition, the cover describes the contents: “ Smut For Women Only “ How To Undress With Class”, “Sex With a Twist”, “ Picadilly Prostitute ” and “ Should She or Shouldn’t She ”, The lower left-hand comer states: “Sale To Minors Forbidden ”.
*271 What the cover promises, the contents delivers. Candid is devoted purely to sex, told pictorially by nndes in almost every conceivable pose and by tales of sex orgies in picture and prose. The advertisements, in line with the over-all theme, are for mail-order photographs and motion pictures of nudes, lingerie, and sexual devices and handbooks.
We have no difficulty concluding, on the basis of the proof offered at the trial, that Candid falls within the ban of the statute and that the appellant, with knowledge of its contents, sold the magazine to a person under the age of 18 years.
We turn now to the constitutional questions. Specifically, appellant contends that section 484-i is unconstitutionally vague, in violation of due process of law, and that the statute’s failure to require proof of scienter as to the age of the purchaser renders it unconstitutional as a limitation on the freedom of speech and the press as guaranteed by the First and Fourteenth Amendments.
Section 484-i divides the material to which it applies into three subdivisions: (1) photographs, drawings and motion pictures depicting specified parts of the body or acts; (2) a combination of such photographs, drawings or motion pictures ‘ ‘ depicted or shown in such a posture or way that the viewer’s attention or concentration is primarily focused on” described parts of the body, and (3) books, magazines, phonograph records or similar sound reproductions containing details, descriptions or narrative accounts of specified sex acts. The material thus made subject to restriction is defined with precision and clarity.
The ‘ ‘ obscenity ’ ’ standard is virtually the same in all three subdivisions. It must be: “ posed or presented in such a manner as to exploit lust for commercial gain and which would appeal to the lust of persons under the age of eighteen years or to their curiosity as to sex or to the anatomical differences between the sexes ”.
Appellant urges that under the statute a conviction may lie based on material which does no more than appeal to the minor’s ‘ ‘ curiosity as to sex or to the anatomical differences between the sexes”. Clearly this is not so. The thrust of the statute is against pandering the obscene to minors. Material which merely appeals to the minor’s “ curiosity as to sex or to the anatomical *272 differences between the sexes ’’without more does not fall within the ban of the statute. In addition, as already noted, the material must be ‘ ‘ posed or presented in such a manner as to exploit lust for commercial gain”. Thus the last-quoted portion appears followed by the conjunctive “ and ” rather than the disjunctive “ or If this were not the case, we would be presented with a different question entirely (see People v. Bookcase, Inc., 14 N Y 2d 409). But clearly the statute is not intended to and does not spill over into the area of constitutionally protected matter.
By explicit provision, the obscene is distinguished from ‘‘ flat and factual statements of the facts, causes, functions or purposes of the subject of the writing or presentation, such as would be found in bona fide medical or biological textbooks ”. The sine qua non of any prosecution under section 484-i goes to the purpose of the material — “ posed or presented in such a manner as to exploit lust for commercial gain” — and this clearly excludes legitimate works of art, educational texts and literature with redeeming social value.
Notwithstanding the concededly imprecise definition of the term “ obscene ”, workable standards are available. “ The intrinsic nature, tendency and bent of the work determines whether it is to be banned or its vendor punished ” (Chief Judge Desmond concurring in People v. Richmond County News, 9 N Y 2d 578, 588). Other quotes from the same opinion elaborate the same recurring theme: “‘For a book to be prohibited it is necessary that from its whole tenor the author’s intention is evident of teaching the readers about sins of impurity and arousing him to libidinousness- ’ (Noldin, De Preceptis Dei et Ecclesiae, p. 658).” ‘“A pornographic book * * * is one deliberately designed to stimulate sex feelings and to act as an aphrodisiac ’ ([St. John-Stevas,] Obscenity and the Law, p. 2).” And again in the recent decision by the Supreme Court in Ginzburg v. United States (383 U. S. 463, 467): “ each of the accused publications was originated or sold as stock in trade of the sordid business of pandering — ‘ the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of their customers.’ Roth v. United States, supra, 354 U. S. [476], at 495-496 (Warren, C. J., concurring). ”
By proscribing specified materials ‘ ‘ posed or presented in such a manner as to exploit lust for commercial gain ”, the *273 statute gives clear and unequivocal warning of the conduct to be avoided. We perceive nothing vague or uncertain about the statutory prohibition and thus hold that the statute provides reasonably ascertainable standards of guilt readily determinable by men of reasonable intelligence (see Herndon v. Lowry, 301 U. S. 242).
The second point urged by appellant presents a question of constitutional law which, although raised, has never before been directly ruled on. (See People v. Kahan, 15 N Y 2d 311; People v. Bookcase, Inc., 14 N Y 2d 409, 418, supra.) It arises from the paradoxical nature of the statute under consideration which, while proscribing certain materials to those under 18, nonetheless affords full First Amendment protection to the same material when considered with relation to those 18 years of age and older. This dichotomy, the appellant contends, requires proof of scienter of age as a predicate to a conviction under the statute.
Section 484-i requires scienter of obscenity, i.e., some knowledge by the bookseller of the character of the book being sold. This is the constitutional mandate of Smith v. California (361 U. S. 147). Its rationale was stated by Mr. Justice Brennan at page 153: “ By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public’s access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the state will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature * * * And the bookseller’s burden would become the public’s burden, for by restricting him the public’s access to reading matter would be restricted. ” (See, also, Mishkin v. New York, 383 U. S. 502.) Of course this rule has been followed in New York (People v. Finkelstein, 9 N Y 2d 342).
The appellant now urges that scienter as to age is also a requirement of the Constitution. He contends that a statute which does not in some maimer require proof of scienter as to the age of the purchaser, as section 484-i does not, is subject to the same unconstitutional infirmities as one not requiring proof of scienter as to obscenity. We cannot agree.
*274 There is a substantial difference, we think, between permitting a conviction without proof of scienter — i.e., some reason to know of the prohibition which attaches to the banned material— and imposing strict liability for the sale of such material to those under the proscribed age after scienter of obscenity exists. The First Amendment does not protect obscenity (Roth v. United States, 354 U. S. 476) and we deal here, not with material which falls under the umbrella of protection, but with material, the dissemination of which may be controlled by the State.
The appellant’s First Amendment argument, we note, seeks no protection for the infant under 18, nor in fact is it directly aimed at his own protection with reference to those in the same age category. His right of dissemination depends on a correlative right in the public to receipt of such material and we have seen that, as to those under 18, no such right exists. The right, if any, belongs to those 18 and over for, as to them, dissemination and receipt are fully protected.
The point urged then is that, absent a requirement of proof of scienter as to age, the bookseller will tend to restrict the sale of such materials to those who he can be sure are over 17 for, so the argument goes, he would rather forego the sale than risk the possibility of conviction. Thus, he says, dissemination to those over 17 will be severely.curtailed in violation of the First Amendment.
The contention, we think, lacks merit. It fails to the extent that there is a major difference between requiring the bookseller to read every piece of material which he chooses to sell and requiring him, to inquire after and establish the age of those persons who will fall within the the doubtful age bracket. Obviously, the number of situations in which such inquiry will be necessary will be quite few. The eye of experience easily perceives the difference between an infant and an adult. Where the area greys, inquiry is required. We have no. doubt that the Legislature could affirmatively mandate such inquiry and we see no reason why the same result cannot be attained by indirection.
As the Supreme Court said in Smith v. California (361 U. S. 147, 154-155, supra): “ Doubtless any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemina *275 tion of material not obscene Tbe question then is not one of absolutes — it is one of reasonableness in relation to the legitimate end to be obtained. We think the burden of the statute neither unduly restricts dissemination of protected matter nor unduly inhibits receipt by those who are constitutionally entitled to receipt.
“ Liberty of speech, and of the press, is also not an absolute right, and the State may punish its abuse ” (Near v. Minnesota, 283 U. S. 697, 708; see, also, Kingsley Books, Inc. v. Brown, 354 U. S. 436). Thus, in the final analysis, the answer to the problem must turn on whether the method adopted for coping with a public evil is kept within the narrowest bounds necessitated by the situation, so as not to impinge on the full measure of guarantees afforded by the First Amendment. We are unable to say that the method adopted by the Legislature, of imposing strict liability on the bookseller for the knowing sale of obscene matter to a minor, infringes upon his constitutional rights or tends to inhibit the free dissemination of literature. That being the case, it is not, of course, for us to determine whether strict liability is the better of two available alternatives. That is a question for the State Legislature. (Compare Penal Law, § 484-i and § 484-h.)
We have examined the appellant’s other alleged assignments of error and find them to be without merit.
The judgment appealed from should be affirmed.