**CINECOM THEATERS MIDWEST STATES, INC., Plaintiff-Appellant,**

v.

**The CITY OF FORT WAYNE et al., Defendants-Appellees.**

**No. 71-1727.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1972.

Decided Jan. 29, 1973.

Vern E. Sheldon, Martin T. Fletcher, Fort Wayne, Ind., for plaintiff-appellant.

Leonard E. Eilbacher, David B. Keller, Fort Wayne, Ind., for defendants-appellees.

Before DUFFY, Senior Circuit Judge, KILEY, Circuit Judge, and CAMPBELL, Senior District Judge.*

CAMPBELL, Senior District Judge.

The plaintiff, Cinecom Theaters, owns and operates two drive-in motion picture theaters located in the City of Fort Wayne, Indiana. The defendants include the City of Fort Wayne and certain of its officials who are charged

* Senor District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

with the responsibility of enforcing the City's ordinances. On February 16, 1971, the plaintiff filed its complaint in the Indiana State Court seeking declaratory and injunctive relief against an ordinance of the City of Fort Wayne. Upon the defendant's petition, the cause was removed to the District Court for the Northern District of Indiana. Following an extensive hearing at which both medical and lay testimony was heard, the district court granted in part and denied in part the relief sought by the plaintiff.[1] Only the plaintiff has appealed and only those portions of the ordinance which the district court found to be constitutional are involved in this appeal.

The ordinance makes it unlawful to exhibit certain types of material in drive-in movie theaters if the material can be seen from any public street or highway. The proscribed material includes any exhibit in which "bare buttocks or the bare female breasts of the human body are shown." Upon a conviction, the ordinance provides that there be a mandatory suspension of the theater operator's license for a period of thirty days.

The plaintiff maintains that the ordinance is void by reason of its overbreadth; that it proscribes the visual presentation of material which is not obscene with reference either to adults or children and, therefore, falls squarely within the protection of the First Amendment. The City of Fort Wayne raises two justifications for proscribing the movie exhibition of "bare buttocks and bare female breasts." The first, and the one on which greater emphasis is placed, is the protection of children or minors from harmful material. The second is the protection of neighbors or

passers-by from having offensive scenes unwillingly thrust upon them. In upholding the constitutionality of the ordinance, the district court adopted the City's contentions, relying principally on the authority of Chemline, Inc. v. City of Grand Prairie, 364 F.2d 721 (5th Cir. 1966), and Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).

At the outset it should be observed that when subjected to the standards set forth in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) and Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), the material here sought to be kept from the public streets and highways would not be considered obscene when viewed by adults.[2] This much the City has admitted and inasmuch as the ordinance proscribes all forms of nudity, regardless of context, the accuracy of the City's forthright concession cannot be doubted.

 A threshold problem concerning the ordinance and the purported *parens patriae* justification for it is that its application is not restricted to minors or children. The visual presentations prohibited by the ordinance necessarily remain unavailable to the adult as well as the juvenile population. In slightly differing context, the Supreme Court has twice held that a State's acknowledged interest in preventing the dissemination of material harmful to children does not justify its total suppression. Butler v. Michigan, 352 U.S. 380, 383, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957); Jacobellis v. Ohio, 378 U.S. 184, 195, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

 We do not conclude, however, that the failure specifically to limit the effect of this ordinance to children is fa-

---

1. A portion of the ordinance in question prohibited the exhibition of motion pictures in which "strip-tease, burlesque or nudist-type scenes constitute the main or primary material." This prohibition was struck down by the district court on the ground that it was impermissibly vague.

2. The *Roth-Memoirs* test of obscenity requires that the material must be taken as a whole, and, when so viewed, must appeal to a prurient interest in sex, patently offend community standards relating to the depiction of sexual matters, and be utterly without redeeming social value.

tal. Although expression by means of motion pictures clearly falls within the ambit of the First and Fourteenth Amendments, "it does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places." Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 502, 72 S.Ct. 777, 781, 96 L.Ed. 1098 (1952). The Court has recognized that each medium of communication presents its own peculiar problems and that, therefore, they are not all subject to identical rules. In *Burstyn* the Supreme Court implicitly acknowledged that the characteristics of a particular method of expression are relevant in determining the "permissible scope of community control." Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 502, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); *Cf.* Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966).

 A drive-in movie theater is indeed a unique form for communication. The visual images exhibited on the screen can be easily observed beyond the confines of the theater itself. All persons within visual range of the theater, children and adults alike, are of necessity exposed to the scenes. The size and character of the potential audience is unlimited and can not be controlled or restricted by the theater operator. Because of these unusual qualities, we conclude that the scope of a community's permissible regulation over the operation of these facilities is broader than it would be with respect to ordinary movie houses.

 Notwithstanding that a city might regulate these facilities through an ordinance narrowly drawn to achieve that objective, Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), we must now consider whether the ordinance in question exceeds that authority. Although the evidence presented by both sides was extensive, it is not very helpful to our determination of the constitutionality of this ordinance. Lengthy testimony was heard from two psychiatrists concerning the effects of simple nudity upon children. The psychiatrist who testified on behalf of the plaintiff expressed the opinion that simple nudity was not harmful to children except to a very small number of them who were reared in what he described as an ultra conservative family environment. The testimony of the City's psychiatrist does not differ substantially except that, as the district court found, his testimony leads to the conclusion that premature exposure to nudity *"in an improper context"* can be destructive to certain children. Indeed most of the City's evidence and testimony was directed to a child's exposure to nudity "in an improper context." The problem with this testimony for our purposes is that the ordinance does not prohibit the exhibition of nudity only when in an improper context, but proscribes the showing of most forms of human nudity. On the authority of Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), it is clear that a city in order to protect the interests of its children could restrict a child's exposure to nudity in an obscene context, and could define obscenity as it relates only to children. The ordinance before us, however, is much broader. The prohibited presentations would include such innocuous and even culturally beneficial exhibitions as the art objects found in many museums, visual portrayals of underdeveloped or "backward" cultures and serious movies such as "Ulysses."

 A state or a city because of its strong and abiding interest in its youth is not without the authority to limit the access to minors of material which would be objectionable as to them, but which would not be obscene in its appeal to adults. Interstate Circuit v. Dallas, 390 U.S. 676, 690, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). In *Ginsberg,* the Supreme Court upheld the constitutionality

of a New York obscenity statute which prohibited the sale to minors under seventeen years of age of material defined to be obscene on the basis of its appeal to them. The New York statute incorporated the three-prong obscenity test of *Roth* and *Memoirs*. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L. Ed.2d 1498 (1957); Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). Obscenity was thus defined by reference to its appeal to minors, whether or not it would be obscene as to adults. The New York Court of Appeals had previously upheld the "Legislature's power to employ variable concepts of obscenity." People v. Tannenbaum, 18 N.Y.2d 268, 270, 274 N.Y.S.2d 131, 133, 220 N.E.2d 783, 785 (1966).

In deciding *Ginsberg* the Supreme Court expressly avoided considering "the impact of the guarantees of freedom of expression upon the totality of the relationship of the minor and the State." *Cf.* In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). As the court stated:

> "It is enough for the purposes of this case that we inquire whether it was constitutionally impermissible for New York . . . to accord minors under 17 a more restricted right than that assured to adults to judge and determine for themselves what sex material they may read or see."

Ginsberg v. New York, 390 U.S. 629, 636–637, 88 S.Ct. 1274, 1279, 20 L.Ed.2d 195 (1968). Having so defined the issue, the Court then concluded that the New York statute, by employing the concept of variable obscenity did not invade the area of freedom of expression constitutionally secured to minors.

The statute before us, however, is more troublesome since it does not employ the three-prong *Roth-Memoirs* test of obscenity as it relates to minors. As the district judge here recognized, this is not an obscenity case in the typical

sense. The material proscribed by the ordinance would not be obscene even under an application of the concept of variable obscenity. Obscenity connotes some sort of sexual or erotic presentation. Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Under the ordinance, any exhibition of the described nudity, regardless of context, is prohibited.

Thus the question before us is broader than passed upon by the Supreme Court in *Ginsberg*. It is not simply whether the City may accord to minors a more restricted right to judge for themselves what material they may read or see. This much was acknowledged in *Ginsberg*. The issue here has not previously been passed upon by the Supreme Court and involves the extent to which a city may restrict the access of its children to materials deemed harmful to them. Stated another way, the question is whether a city may go beyond the restrictions implicit in the concept of variable obscenity.

We know of only one case to have considered the question presently before us, Interstate Circuit, Inc. v. City of Dallas, 366 F.2d 590 (1966). There the Court of Appeals for the Fifth Circuit invalidated a Dallas ordinance relating to the classification of motion pictures as "suitable" or "unsuitable" for children under sixteen years of age. Besides material obscene as to children,[3] the ordinance included within the definition of unsuitable material the showing of movies depicting excessive brutality and criminal violence. The Court of Appeals upheld the ordinance in so far as it attempted to regulate material defined within the variable obscenity approach, but determined that the prohibitions against exhibitions of excess brutality and criminal violence were unconstitutional. The court related that "while we recognize the interest of society in protecting children, we find even the child's freedom

3. See Interstate Circuit, Inc. v. City of Dallas, 249 F.Supp. 19 (N.D.Texas 1965).

of speech too precious to be subjected to the whim of the censor." Interstate Circuit, Inc. v. City of Dallas, 366 F.2d 590, 598–599 (5th Circuit 1966).

 We agree with the Fifth Circuit Court that a city may not, consonant with the First Amendment, go beyond the limitations inherent in the concept of variable obscenity in regulating the dissemination to juveniles of "objectionable" material. We observe first that children do not stand outside the protections of the Constitution. Cf. In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). They are entitled, with some minimal limitations, to the guarantees which flow from our Constitution, including the freedoms of speech and expression. See Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Although society is free to express its special concern for its children in a variety of regulatory schemes, it may not excise a child's constitutional prerogatives under the guise of protecting his interest. Cf. Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). At least in so far as the First Amendment is concerned, and considering that the ordinance here is not circumscribed by the concepts of variable obscenity, we must concur with the Court of Appeals for the Fifth Circuit that a child's freedom of speech is too important to be overridden by an ordinance expressing the community's view of what it considers as material harmful to its youth.[4] Interstate Circuit, Inc. v. City of Dallas, 366 F.2d 590 (5th Cir. 1966).

 Although a city possesses the authority to regulate this industry for the protection of its children from exposure to material obscene as to them, the ordinance here is much broader than that permissible objective and therefore runs afoul of the First and Fourteenth Amendments to the Constitution. In reaching this conclusion, we are not persuaded by the Fifth Circuit Court's decision in Chemline, Inc. v. City of Grand Prairie, 364 F.2d 721 (1966), a decision upon which the district court expressly relied. Chemline upheld the constitutionality of an ordinance very similar to the one enacted by the City of Fort Wayne. Aside from the substantial factual distinctions between Chemline and the present case, the legal considerations which have influenced our decision were neither advanced nor considered in Chemline. Moreover, Interstate Circuit, Inc. was decided subsequent to the decision in Chemline. For similar reasons, we choose not to be guided by the citations relied upon by the City.

 We turn now to the second justification advanced here by the City in support of its ordinance. As an independent basis for sustaining the same portion of the ordinance, the district court found that the exhibition of this matter on a drive-in theater screen amounted to "an assault upon individual privacy . . . in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it." Redrup v. New York, 386 U.S. 767, 769, 87 S.Ct. 1414, 1415, 18 L.Ed.2d 515 (1967). Although much is made of the interference that these scenes impose upon neighbors in the peaceful enjoyment of their homes, the ordinance itself proscribes the showing of material only if it can be seen from a public street or highway. There is no mention of individual privacy or the sanctity of the home in the ordinance. Indeed the district judge consistently ruled that evidence of what could be seen from private property was irrelevant and thus inadmissible. Thus the ordinance must stand or fall upon the authority of the

---

4. We consider it worthy of note that despite the extensive testimony from the two psychiatrists, there was no evidence that nudity *per se*, regardless of context, is at all harmful to children.

City to curtail expression in the public arena of material which is not obscene to adults but which is objectionable to certain of them. Although dealing with verbal rather than visual expressions, the Supreme Court in Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed. 2d 284 (1971) stated the rule as follows:

"The ability of government, consonant with the Constitution, to shut out discourse solely to protect others from hearing it is, in other words, dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner."

The record here falls short of such a showing. Passing motorists were able to see the screen for only a short moment. The disruption of traffic or traffic accidents were simply not problems. Nor was there any evidence to indicate that the visual presentations were so obnoxious to those walking in the area so as to preclude their avoidance simply by averting the eyes. See Cohen v. California, 403 U.S. 15, 21, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Having elected to permit the operation of drive-in movie theaters in this area, some unwitting exposure to these and other types of scenes was inevitable. Since the ordinance applied to exhibitions visible in public areas, and since there was no showing that the visual presentations were so "obtrusive" as to preclude their avoidance, we conclude that the ordinance exceeded the authority of the City to legislate for the protection of recognizable privacy interests. Cf. Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

Since we have concluded that the ordinance is void by reason of its overbreadth and, therefore, transgresses the limitations of the First and Fourteenth Amendments, we need not consider the other challenges to the ordinance advanced by the plaintiff. For the reasons given, the judgment of the district court is reversed.

Reversed.