Chief Judge Desmond
(dissenting). The majority holds as matter of law that “Memoirs of a Woman of Pleasure ” (“Fanny Hill”) is not obscene although for centuries it has been cited throughout the world as the very prototype and archetype of obscenity, “ the pornographic best seller of all time ” (Lath, The Erotic in Literature, 1961, p. 32). Its prostitute-heroine ‘ ‘ meets with just about every conceivable sexual adventure ” (Lath, p. 110) in this explicit “how to do it” manual of illicit sex (Lath, p. 110). In “ An Unhurried View of Erotica ” (1958) Ginzburg describes its “ utmost salaciousness ” (p. 72; see, also, pp. 64-74, 109-110).
Under our decisions (People v. Richmond County News, 9 N Y 2d 578) pornography is the essential element of obscenity but “Fanny Hill” easily passes the test since it describes to the last intimate physical detail numerous instances not only of prostitution but of voyeurism, transvestism, homosexuality, lesbianism, flogging, seduction of a boy, etc., etc. Indeed, the book is “ pornography ” in the strictest philological and etymological sense of the word since it is, quite literally, the narration by a prostitute of the particulars of her trade. The very “ Introduction ” to the new American edition labels the work as ' ' priapic ’ ’ and boasts that it has been suppressed in many places over the years. The extensive history of its production and distribution shows that it was never anything more than an 18th Century potboiler written (see Ginsburg, p. 64, supra) and sold as under-the-counter pornography. Yet the majority says that its sale cannot legally be enjoined in this State.
The court’s reasons for reversal are as unclear as its description of the book is inadequate. “ It is an erotic book,” blandly admits the opinion, “ concerned principally with sexual experiences, largely normal, but some abnormal ”, surely a euphemistic labeling of this journal of brothel life. It seems that since some *406 critics testify that the book has merit, it cannot be suppressed, particularly since the Supreme Court has reversed State court action banning some vaguely similar books and magazines. If such reasons justify the reversal of this injunction, no such injunction can ever stand and section 22-a of our Code of Criminal Procedure disappears. Here there was no suppression by a censor, no unconstitutional prior restraint (Brown v. Kingsley Books, 1 N Y 2d 177, affd. 354 U. S. 436) but a judicial declaration as to alleged obscenity. Every element of due process was satisfied and yet the Appellate Division’s finding of obscenity, as to a book regarded for centuries as obscene, is being reversed because critics found in it some good writing and some slight literary value. Hereafter, pornography no matter how gross (see Grove Press v. Gerstein, 378 U. S. 577, validating “ Tropic of Cancer ”) is immune and safe so long as critics praise its writing style and discover “ social significance ”, whatever that may mean.
The reach of this decision, great as it is, becomes incalculable when read with today’s companion reversal in People v. Bookcase, Inc. (14 NY 2d 409). Here the court holds that “ Fanny Hill” is not obscene. People v. Bookcase, Inc., going much further, says that the sale of “ Fanny Hill ” to children cannot be prevented or punished since the prohibitory statute (Penal Law, § 484-h) is unconstitutional. Too vague for enforcement, it is said, is the Legislature’s language: ‘ ‘ which exploits, is devoted to, or is principally made up of descriptions of illicit sex or sexual immorality”. Since no clearer or more explicit a statement is conceivable, it seems to follow from the Bookcase decision, plus this one, that in New York State from now on there are not and cannot be any barriers to the general sale to purchasers of any age of the most blatant and unmistakable pornography provided there be discoverable therein some social or stylistic significance. It would be as easy as it is unnecessary to resort to superlatives in describing this extraordinary result but it speaks for itself.
It is today’s fashion to find literary values in any sexy writing and to ridicule as blue-nosed prying Puritans and enemies of art and literature all those who try to preserve a modicum of public decency in our society. And into the law itself there has come from nowhere a new constitutional theory which licenses *407 the most unrelieved sexual filth either on the theory of ‘ ‘ prevailing community standards ” (Larkin v. G. I. Distrs., 14 N Y 2d 869) or on a finding of literary merit or social values (Grove Press v. Gerstein, supra). The “literary merit” ground has slowly evolved from an exception in favor of recognized literary classics into an exception for any writing which can command the praise of a recognized critic. As to “community standards ”, who measures and discovers them? When local courts with or without juries find that a book or movie is below standard, the appellate courts reject the findings because the court “ cannot avoid making an independent constitutional judgment on the facts of the case ” (Jacobellis v. Ohio, 378 U. S. 184, 190).
I refuse to believe that all this can continue to be the law. I predict that the wheel will turn and the pendulum swing back. Some time and somehow we will return to the historical meaning of ‘ ‘ Freedom of the Press ’ ’. On that awaited day the courts will find it possible in at least some extreme cases not only to announce but to apply their oft-repeated holding that obscenity is an exception to the First Amendment’s protections. As things now stand, New York State has obscenity statutes of the sort consistently held to be constitutional (Roth v. United States, 354 U. S. 476) but with equal consistency refused application by the highest Federal court to any particular book or movie.
The order should be affirmed.