Van Voorhis, J.
Appellants have been convicted under section 484-h of the Penal Law of selling to a minor under 18 years of age a copy of a book entitled “ Memoirs of a Woman of Pleasure ” (“Fanny Hill”). Another case, decided at the same time, involves whether this book is obscene under section 1141 of the Penal Law. That question is not before the court upon this appeal. Both counsel for the appellant and the Assistant District Attorney concede that the conviction of these defendants does not depend upon any finding or conclusion that this book is obscene. The determination that the book is not obscene therefore does not exonerate these defendants from the present charge. Even if the book is not obscene within the meaning of the Constitution, the narrative is mainly concerned with accounts of extra-marital sexual relationships. The conviction of defendants is under that portion of section 484-h of the Penal Law which purports to prohibit the sale to a minor under 18 years of age of “ any book * * * the cover or content of which exploits, is devoted to, or is principally made up of descriptions of illicit sex or sexual immorality ’ ’. The constitutional attack on this statutory provision is based on the grounds that it abridges freedom of speech and of the press in violation of the First Amendment to the Constitution of the United States and that it violates the Fourteenth Amend *412 ment by denying due process of law in that the language is too vague for a criminal statute (Connally v. General Constr. Co., 269 U. S. 385, 391; People v. Firth, 3 N Y 2d 472).
Former subdivision 2 of section 1141 of the Penal Law, as construed in People v. Winters (294 N. Y. 545), was held by the Supreme Court to be unconstitutional in Winters v. New York (333 U. S. 507). -The statute there held to be void prohibited the sale of books and other printed matter “ principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime ”. Our court had construed this statute as limited to the publication of collections of criminal deeds of bloodshed or lust “ so massed as to become vehicles for inciting violent and depraved crimes against the person ” (294 N. Y., p. 550). The United States Supreme Court said (pp. 519-520): " The statute as construed by the Court of Appeals does not limit punishment to the indecent and obscene, as formerly understood. When stories of deeds of bloodshed, such as many in the accused magazines, are massed so as to incite to violent crimes, the statute is violated. It does not seem to us that an honest distributor of publications could know when he might be held to have ignored such a prohibition. Collection of tales of war horrors, otherwise unexceptionable, might well be found to be ‘ massed ’ so as to become vehicles for inciting violent and depraved crimes.’ Where a statute is so vague as to make criminal an innocent act, a conviction under it cannot be sustained. Herndon v. Lowry, 301 U. S. 242, 259.”
Again, the court said at page 515: “ There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment.” The Supreme Court also held in the Winters case that the statute in question unconstitutionally limited freedom of expression protected by the principles of the First Amendment (pp. 509-510, 512, 519-520).
Subsequent to the decision by the United States Supreme Court in 1948 in Winters v. New York (supra), several bills were passed by the New York State Legislature seeking to overcome its effect. Two of these, one passed in 1949 and the other in 1952, were vetoed by Governor Thomas E. Dewey upon the ground that they were unconstitutional under the Winters *413 case. The 1952 bill (Assem. Int. No. 2799, Pr. No. 2944) would have prohibited the sale of books or other printed matter “ devoted to the publication and principally made up of pictures, whether or not accompanied by any written or printed matter, of fictional deeds of crime, bloodshed, lust or heinous acts, which tend to incite minors to violent or depraved or immoral acts.”
In his veto message dated April 12, 1952, Governor Dewey said concerning this bill (Public Papers of Governor Thomas E. Dewey, 1952, pp. 259-260):
“It is similar to legislation disapproved by me in 1949 with memorandum (Senate Introductory 1862, Printed Number 2939) and is subject to the same constitutional infirmities inherent in the 1949 proposal and the statute held unenforceable by the Supreme Court. * * *
“ The wording of the present bill is as vague and devoid of specificity as the previous statutory provisions. The minor changes in language do not cure the basic deficiency of the earlier law” as found by the United States Supreme Court in the Winters case.
In signing the present bill, originally enacted as chapter 836 of the Laws of 1955, and later renumbered section 484-h of the Penal Law, Governor Averell Harriman said: ‘ ‘ The constitutionality of some aspects of this bill has been questioned by some, and strongly affirmed by others. In view of the conditions with which we are trying to cope, it seems to me that such questions should be left to the courts for determination.” (Public Papers of Governor Averell Harriman, 1955, p. 282.)
This court is now called upon to cope with one of the more important of these questions.
As was noted in the principal opinion of the Criminal Court of the City of New York, there would have been no occasion for enacting section 484-h of the Penal Law unless it forbade more than was already prohibited by section 1141. “ Section 484-h ”, said the Criminal Court, “ prohibits the sale to minors of books which exploit, are devoted to, or deal principally in descriptions of illicit sex or sexual immorality. There is no such prohibition contained in section 1141 (People v. Finkelstein, 156 N. Y. S. 2d 104).”
*414 This part of the opinion of the Criminal Court indicates the basis on which the case was decided and on which it has to be decided. Section 1141 of the Penal Law already prohibited the sale, exhibition or other disposition of pictures or printed material which are obscene, lewd, lascivious, filthy, indecent or disgusting, and articles or instruments of indecent or immoral use, with the consequence that there is little if anything left to section 484-h that was new except the part to which the opinion of the Criminal Court refers and under which these defendants have been convicted. Material which exploits, is devoted to, or is principally made up of descriptions of illicit sex or sexual immorality is distinguished, in section 484-h, from what is obscene by the use of the disjunctive “ or ”, The prosecution urges that, under the language of this statute, it is not necessary for this book to be obscene in order to sustain the conviction of defendants if it mainly describes or is devoted to illicit sex or sexual immorality. This is not different from the bills passed in 1949 and 1952, which prohibited fictional accounts of lust, except that the present language omits the qualification “which tend[s] to incite minors to violent or depraved or immoral acts ’ ’. The latter words were not included in the statute before the courts in the Winters case, but were added by this court as having been intended by implication (294 N. Y. 545). But when the case reached the Supreme Court of the United States, the “incitement” clause was expressly held to be too vague for a valid criminal statute. So this time the Legislature omitted these words, as they had been omitted from subdivision 2 of section 1141 in the beginning. We are thus confronted with a constitutional question not unlike that which would have been before the United States Supreme Court in the Winters case, if the “incitement” clause had not been added to that statute by implication by this court. The Supreme Court is, of course, bound by the construction of State statutes which is placed upon them by the State courts.
The quality of the printed or pictorial material which is forbidden by the portion of the statutory enactment which is now before us is, consequently, not to be judged by whether it tends to incite minors or adults to immoral acts, or by whether it is in its nature obscene in the eyes of minors or of adults, but whether the Legislature can constitutionally prevent the
*415 sale to minors of this age of material which deals mainly with illicit sex or sexual immorality. The purpose and the only object of this clause in the statute, under which defendants stand convicted, was to prevent or limit publications or pictures coming before the eyes of the young which are principally based upon the theme of sexual conduct that is contrary to the mores of society. This statute does not distinguish between material regarded as obscene for teenagers but unobjectionable to adults; it sets no variable standards of what constitutes obscenity according to the age or other type of group at which the material in question is principally aimed, nor does this clause in the statute render it necessary to conviction that the material dealing with illicit sex or sexual immorality shall have been presented in a salacious manner. A statute could hardly be draAvn which would permit exhibition of intimate sexual details of married life, for example, * and at the same time exclude similar presentations where the participants are not married. On the contrary, the only construction of which this statutory language is susceptible is that the subject of illicit sex or sexual immorality is not to be brought before the young by pictures or writings — scientific, fictional or otherwise which are devoted principally thereto.
The decisions of the United States Supreme Court leave no doubt that legislation designed to restrict the sale or other distribution to adults of material principally devoted to, or even advocating, illicit sex or sexual immorality would be unconstitutional, both upon the grounds of vagueness, in case of criminal statutes, and of abridgment of freedom of speech or of the press in case of all statutes (Winters v. New York, supra; Joseph Burstyn, Inc., v. Wilson, 343 U. S. 495; Superior Films v. Department of Educ., 346 U. S. 587; Commercial Pictures Corp. v. Regents, 346 U. S. 587, revg. 305 N. Y. 336, where a motion picture had been censored under Education Law, § 122, as immoral and tending to corrupt morals; Gelling v. Texas, 343 U. S. 960; Holmby Prods. v. Vaughn, 350 U. S. 870, where the statute prohibited productions tending to debase or corrupt morals; One, Inc., v. Olesen, 355 U. S. 371, revg. 241 F. 2d 772; Times Film Corp. v. City of Chicago, 355 U. S. 35, revg. 244 *416 F. 2d 432; Sunshine Book Co. v. Summerfield, 355 U. S. 372, revg. 249 F. 2d 114; Kingsley Pictures Corp. v. Regents, 360 U. S. 684, upholding the right to portray or advocate other standards of sexual conduct than those approved by the community).
The question remains whether the constitutionality of section 484-h of the Penal Law is saved by the circumstance that it relates only to minors under 18 years of age. Insofar as the statutory language may be construed to be vague for a criminal statute under the decisions cited, it would appear to involve no distinction that it is addressed to minors under 18 years of age. It is noteworthy that the 1954 Report to the Legislature of the committee on whose recommendation the present section 484-h of the Penal Law was originally adopted recommended an addition to the obscenity statute proposed to be known as section 1141-b, which would have forbidden the commercial distribution to minors of material ‘‘ which, for a minor, is obscene, lewd, lascivious, filthy, indecent or disgusting ’ (Italics supplied.) A recognition that printed material or pictures may be classified as obscene for minors which would not be so for adults would have been in accord with statutes adopted in a number of other jurisdictions (see “For Adults Only: The Constitutionality of Governmental Film Censorship by Age Classification”, 69 Yale L. J. 141; Lockhart and McClure: Censorship of Obscenity, 45 Minnesota L. Rev. 5, esp. pp. 68-88 on constant and variable obscenity and effect upon the sexually immature; Gerber: A Suggested Solution to the Riddle of Obscenity, 112 U. of Pa. L. Rev. 834, esp. pp. 847-852 on variable obscenity). Proposals have been made to restrict the attendance of teenagers at certain motion pictures. The American Law Institute Model Penal Code (Tent. Draft No. 6, 1957, § 207.10, subd. [2]) has stated that “Obscenity shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other specially susceptible audience if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience.” A discussion of this aspect in other countries is found in a book by St. John-Stevas, entitled “ Obscenity and the Law” (1956), at pages 212-213, 221-231, 243, 247-250, 256. Variable obscenity, depending upon the type *417 of person to whom it is mainly addressed, was considered in Manual Enterprises v. Day (289 F. 2d 455, revd. on other grounds 370 U. S. 478); United States v. 31 Photographs. (156 F. Supp. 350, 354, 356, 359); and by Chief Justice Wabreet concurring in Roth v. United States (354 U. S. 476, 494, 495).
No question is here presented concerning how the Legislature might constitutionally provide different standards of obscenity as applicable to different age groups. The statute recommended by the Legislative Committee in 1954 was not adopted, and the next year the same committee, instead of renewing its recommendation of legislation regarding what would be obscene for minors, presented the predecessor of the present section 484-h of the Penal Law (N. T. Legis. Doc., 1954, No. 37; 1955, No. 37). As has previously been stated, the portion of that section under which appellants have been convicted has nothing to do with obscenity. We do not have before us to decide whether “ Fanny Hill”, having been held to be not obscene for adults, would be obscene for children under 18 years of age. Appellants, it may be repeated, have not been convicted of selling an obscene book to a minor, but one which is principally devoted to descriptions of illicit sex or sexual immorality, unrelated to whether the book is obscene. The People concede that no issue of obscenity is before the court on this appeal.
The issue shapes itself into whether the Legislature can constitutionally restrict the sale, circulation or exhibition of pictures or printed material to minors under 18 years, for the reason that it is principally devoted to the subjects of illicit sex or sexual immorality. These words are either too vague to apprise possible defendants of what they mean, or, if they are to be interpreted as referring exclusively to extra-marital sex or sexual perversion, then they would forbid all publications or pictures mainly devoted to those subjects, regardless of the manner in which they are presented, whether by way of fiction, sociological discussion, moralizing, or otherwise. The Oedipus legend in classic Greek drama would be forbidden because it is principally devoted to incest, the Tristan and Isolde legend and Hawthorne’s “ Scarlet Letter ” would be illicit reading for the young because it is principally made up of adultery, Bernard Shaw’s “ Mrs. Warren’s Profession” would be outlawed for obvious reasons, as well as all writings *418 dealing with homosexuality. Such a list could be extended almost indefinitely. It is not suggested that these or other parallel works of literature are likely to be offered for sale at the same newsstands where the type of comic books are purchased which was the main reason for the adoption of this legislation, but the constitutionality of a statute governing publications is to be tested by what can he done under it and not by the particular violation which is charged with having occurred. It seems to us that this statute is drawn so broadly as to render criminal sales or other exhibition to the young of pictures and publications of all kinds which are principally devoted to these subjects, in however serious or dignified a manner, and, in our view, it is so broad and so obscure in its coverage as to abridge the constitutionally protected freedom of speech and of the press as well as the due process clauses in the Federal and State Constitutions.
This being our conclusion, it is unnecessary to consider whether the ruling in Smith v. California (361 U. S. 147) would require that the bookseller have notice that the purchaser is under 18 years of age. The analogy of sales of liquor to minors is not perfect, for the same reasons the United States Supreme Court regarded scienter as a constitutional necessity on the part of a bookseller of the contents of a book. It was held that if scienter were not required, it would interfere with the sale of books and magazines to such an extent as to constitute an abridgment of freedom of the press. We express no opinion at this time on whether the same result would be reached if the bookseller were to be held criminally liable without notice that the purchaser was under 18 years of age, or on whether carrying books on the shelves of a bookstore might be deemed to be with intent to sell to minors as well as to adults and what effect, if any, that might have on restricting sales to adults.
Likewise it is unnecessary, in view of the ground of decision, to decide whether appellant Weisfeld could be held on account of alleged lack of knowledge on his part that the bookstore clerk would sell this book to a minor under 18 years of age.
The judgments of conviction should be reversed and the information dismissed.

 E.g., as in modem fiction by James Michener, John O’Hara, or Mary McCarthy (“The Group”).