Joseph S. Mattina, J.
Plaintiff has brought an action for declaratory judgment before this court.
In this declaratory judgment action, plaintiff challenges the constitutionality of subdivisions (J)[l] and (J)[2] of section 35 of chapter 9 of the Buffalo Anti-Obscenity and Display to Minors Ordinance.
*1034 I
Plaintiff Hyman Calderon is the sole proprietor of Neisner’s Smoke Shop engaged in the sale of all types of smoking accessories and magazines. On August 19, 1976 he was arrested and charged with violating the Buffalo Anti-Obscenity and Display to Minors Ordinance for displaying materials which were "devoted to or principally made up of descriptions or depictions of illicit sex or sexual immorality, or which consisted of pictures of nude or partially denuded figures presented in a manner to provoke or arouse lust or passion, or to exploit sex, lust or perversion for commercial gain”.
The ordinance provides:
"(J) Sale or exhibition to minors of indecent publications, pictures or articles. (1) No person within the City of Buffalo shall willfully or knowingly engage in the business of selling, lending, giving away, showing, advertising for sale or distributing to any person under the age of seventeen (17) years or have in his possession with intent to engage in the said business or to otherwise offer for sale or commercial distribution to any individual under the age of seventeen (17) years any pornographic motion picture, or any still picture or photograph or any book, pocketbook, pamphlet or magazine the cover or content of which exploits, is devoted to, or is principally made up of descriptions or depictions of illicit sex or sexual immorality or which is obscene, lewd, lascivious, or indecent, or which consists of pictures of nude or partially denuded figures posed or presented in a manner to provoke or arouse lust or passion or to exploit sex, lust or perversion for commercial gain or any article or instrument of indecent or immoral use.
"(2) No person within the City of Buffalo shall display at newsstands or any other business establishment frequented by minors under the age of seventeen (17) years or where said minors are or may be invited as a part of the general public any pornographic motion picture, or any still picture or photograph or any book, pocketbook, pamphlet or magazine the cover or content of which exploits, is devoted to, or is principally made up of descriptions or depictions of illicit sex or sexual immorality or which is obscene, lewd, lascivious, or indecent, or which consists of nude or partially denuded figures posed or presented in a manner to provoke or arouse lust or passion or to exploit sex, lust or perversion for commercial gain, or any article or instrument of indecent use.
*1035 "(3) For the purposes of this subsection 'descriptions or depictions of illicit sex or sexual immorality’ shall mean:
a. Human genitals in a state of sexual stimulation or arousal;
b. Acts of human masturbation, sexual intercourse or sodomy;
c. Fondling or other erotic touching of human genitals, pubic region, buttocks or female breast.
" 'Nude or partially denuded figures’ shall mean:
a. Less than completely and opaquely covered (a) human genitals, (b) pubic regions, (c) buttocks and (d) female breast below a point immediately above the top of the aeróla; or
b. Human male genitals in a discernibly turgid state, even if completely and opaquely covered.”
Although the charge was later dismissed, plaintiff brought this declaratory judgment action to test the validity of the ordinance, alleging that he and others similarly situated suffered a real and substantial "chilling effect” from the threat of future prosecution. Plaintiff further alleges that he has suffered an economic injury through loss of sales resulting from his attempted compliance with the ordinance. These allegations are not controverted by the City of Buffalo which in effect has consented to the request for declaratory judgment.
Plaintiff challenges the ordinance on two grounds: first, that it is overbroad in violation of the First and Fourteenth Amendments to the United States Constitution in that the ordinance prohibits the possession and display of materials which are not obscene either as to adults or minors; and second, that the ordinance is void for vagueness in violation of the due process clause of the Fourteenth Amendment.
II. OVERBREADTH
It is well established that governmental regulation of activities involving freedom of speech and of the press may not be accomplished by means which sweep unnecessarily broadly. That this principle applies to obscenity regulation was made clear by the Supreme Court in Miller v California (413 US 15, 23-24): "State statutes designed to regulate obscene materials must be carefully limited.”
This requirement equally applies to obscenity regulation *1036 directed at the protection of children. In Erznoznik v City of Jacksonville (422 US 205, 212-213) the Supreme Court stated: "It is well settled that a State or municipality can adopt more stringent controls on communicative materials available to youths than on those available to adults ,* * * Nevertheless, minors are entitled to a significant measure of First Amendment protection * * * and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them.” (Citations omitted.)
Subdivisions (J)[l] and (J)[2] of the ordinance involved in this case prohibit the display of three classes of sexually oriented materials. First are banned those materials which describe "illicit or immoral sex” as defined in subdivision (J)[3], without regard to the offensiveness of the description and without regard to whether the material, taken as a whole, lacks serious value for minors. This language thus seeks to prohibit the display of sexually explicit material without regard to the context in which it is presented. The subdivision goes on to prohibit the display of materials which are obscene as to minors. The definition of obscenity as to minors may be found in subdivisions (f) and (g) of the ordinance; it closely parallels the provisions of article 235 of the Penal Law that were upheld in Ginsberg v New York (390 US 629). The subdivision concludes with a prohibition of the display of material containing descriptions of nude or partially denuded figures "posed or presented in a manner to provoke or arouse lust or passion”. Again, this language seeks to prohibit the display of sexually oriented material which may or may not be "harmful to minors”.
These provisions thus proscribe the display of materials which are not proscribed for sale by subdivision (g). Because the ordinance bans the display of sexually oriented material which may not be obscene, it is overbroad and unconstitutional.
In Roth v United States (354 US 476, 487-488) the Supreme Court explicitly recognized that sex and obscenity are not synonomous: "The portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press. Sex, a great and mysterious motive force in human life, has indisputably been a subject of absorbing interest to mankind through the ages; it is one of the vital problems of human interest and public concern. * * * It is therefore vital that the *1037 standards for judging obscenity safeguard the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest.” (Footnotes omitted.)
In Miller (supra) the court reaffirmed that the State could prohibit only hard-core pornography, laying down a three-pronged test for obscenity; only that material which contains descriptions of explicit sexual conduct in a patently offensive way and which lacks serious literary, artistic or scientific value as a whole can be prohibited as obscene. Under these standards, the portrayal of nudity or illicit sex alone is not sufficient to justify a finding of obscenity, and New York courts have so held. (Matter of Excelsior Pictures Corp. v Regents of Univ. of State of N. Y., 3 NY2d 237; People v Bookcase, Inc., 14 NY2d 409; People v Stabile, 58 Misc 2d 905, cited with approval in People v Heller, 33 NY2d 314.)
In Ginsberg v New York (390 US 629, supra) the Supreme Court lent its sanction to the concept of variable obscenity developed by the Court of Appeals in Bookcase, Inc. v Broderick, (18 NY2d 71, 75) quoting: "material which is protected for distribution to adults is not necessarily constitutionally protected from restriction upon its dissemination to children. In other words, the concept of obscenity or of unprotected matters may vary according to the group to whom the questionable material is directed or from whom it is quarantined. Because of the State’s exigent interest in preventing distribution to children of objectionable material, it can exercise its power to protect the health, safety, welfare and morals of its community by barring the distribution to children of books recognized to be suitable for adults.”
Neither the Supreme Court nor the Court of Appeals has had the opportunity to pass upon the impact of Miller on the definition of obscenity as to minors; however, it is clear that all nudity cannot be deemed obscene even as to minors, (Erznoznik v City of Jacksonville, 422 US 205 supra). In Erznoznik, the court invalidated an ordinance which prohibited the showing of films containing nudity by drive-in theaters when the screens were visible from a public street or place. In response to Jacksonville’s contention that the ordinance was necessary to protect the morals of children who would be exposed to the material, the court stated that the ordinance swept too broadly in that it banned the showing of *1038 films containing any form of nudity, not merely that which could be found obscene.
In Ginsberg, the court upheld the constitutionality of section 484-h of the Penal Law as a "diluted” formulation of the Roth-Memoirs definition of obscenity. That statute made reference to all the factors that were included in the definition of obscenity as to adults; it did not forbid dissemination of sexually oriented material which either was not offensive to minors or which might have had some serious value for minors notwithstanding its sexual focus, in contrast to the Buffalo ordinance. Neither Ginsberg nor Bookcase, Inc. v Broderick, (supra) support the view that descriptions of illicit sex or nudity in themselves are obscene as to minors. Nothing in those decisions indicates any retreat from the holding in People v Bookcase, Inc. (14 NY2d 409, supra) quoted with approval in People v Heller (33 NY2d 314, 377, supra). See also, Matter of Gordon v Walkley (41 AD2d 493, revd 34 NY2d 927) on the dissenting opinion of Justice Greenblott and the discussion in Allied Artists Pictures Corp. v Alford (410 F Supp. 1348, definition of obscenity as to minors overbroad because it banned offensive speech regardless of contextual considerations). These authorities require the conclusion that the Buffalo ordinance seeks to prohibit the display of materials which heretofore had not been thought obscene.
The City of Buffalo submits that subdivisions (J)[l] and (J)[2] were intended to proscribe the display only of materials which could be found obscene as to minors and asks this court to uphold such a construction of the ordinance. That the legislation cannot be read so narrowly is evident from the plain language of the challenged provisions and from the structure of section 35 as a whole. Where the Legislature intended to make a finding of obscenity a predicate for imposing criminal liability, they specifically stated this intention, as in subdivisions (c), (d), (f) and (g). Furthermore, the affirmative defenses to a prosecution for dissemination of obscene material to minors provided by subdivisions (h) and (i) are not available to persons charged with a violation of subdivision (J). In view of the careful precision with which these subdivisions were drafted, the failure of the legislature to engraft a "harmful to minors” clause on subdivision (J) evidences an intent to prohibit the display of sexually oriented materials which are not obscene either as to adults or minors. Perhaps these factors account for the failure of the City of Buffalo to provide this *1039 court with any evidence that would support an alternative construction.
What the City of Buffalo urges, under the guise of a "limiting construction” is a whosesale rewriting of the ordinance. Such an approach was condemned by the Supreme Court of Tennessee in these words: "The function of this court is to interpret a statute against the constitution of this State and that of the United States and we will not and cannot usurp the prerogatives of the legislature by supplying essential elements to a statute which have been omitted by that body.” (Art Theatre Guild v State ex rel. Rhodes, 510 SW2d 258, 261 [Tenn].) See, e.g., People v Bookcase (supra) and Rabeck v New York (391 US 462); People v Tannenbaum (18 NY2d 268).
We are left with the question that was framed but not decided by the Court of Appeals in People v Lou Bern Broadway (32 NY2d 816): whether the State has the power to regulate public displays short of obscenity. In Young v American Mini Theatres (427 US 50) the Supreme Court dismissed for lack of standing a challenge to a Detroit zoning ordinance that regulated the location of adult book stores and movie theatres. In the course of a plurality opinion, four Justices advanced the notion that highly erotic speech is not entitled to the full protection of the First Amendment; implied in this language is the power of the State to regulate the display of highly erotic material short of obscenity.
In Young, the purpose of the zoning regulation was to prevent the deterioration of commercial neighborhoods that had become associated with a high concentration of adult book stores and movie theatres in a single area. In contrast, the Buffalo ordinance is a direct attempt to regulate the content of expression reaching the young; as such it falls within the ambit of Erznoznik, wherein it was stated that "speech that is neither obscene as to youths nor subject to some other legislative proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them”. (Erznoznik v City of Jacksonville, 422 US 205, 213-214, supra.)
The Court of Appeals’ most recent statement concerning the permissible range of governmental regulations of obscenity as to minors came in Gordon v Walkley (supra). There, the court held that the Commissioner of Agriculture, pursuant to his general power to regulate displays at county fairs, could not ban the distribution to minors of comic books which were not *1040 obscene, even though they dealt with subjects of illicit sex and suggested that sodomy and homosexuality were acceptable. Until our appellate courts rule otherwise, speech which is not obscene under the Ginsberg formulation is beyond the regulatory power of this State.
"The Court must never forget that the consequences of rigorously enforcing the guarantees of the First Amendment are frequently unpleasant. Much speech that seems to be of little or no value will enter the market place of ideas, threatening the quality of our social discourse and, more generally, the serenity of our lives. But that is the price to be paid for constitutional freedom.” (Young v American Mini Theatres, 427 US 50, 88, supra, Stewart, J. dissenting.)
For similar holdings that a State may not go beyond the restrictions implicit in the concept of variable obscenity in regulating the display to juveniles of "objectionable” material, see Cinecom Theatres Midwest States v City of Fort Wayne (473 F2d 1297); State v Cardwell, (22 Ore App 242); and Allied Artists Pictures Corp. v Alford, (410 F Supp 1348, supra). The rationale of these decisions is that a child’s freedom of speech is too important to be overridden by an ordinance expressing the legislature’s view of what it deems to be material harmful to its youth. When a legislature prohibits the display of all material dealing with illicit sex, it bans the serious along with the frivolous writings devoted to those subjects. And, as the court in Salem Inn v Frank (522 F2d 1045) noted, the portrayal of mere nudity conveys a message entitled to constitutional protection; though there may be only a modicum of expression involved, that modicum is of constitutional significance.
III. VAGUENESS
Plaintiff further challenges subdivision (J)[l] and (J)[2] on the ground of vagueness. This challenge is focused on that part of the subdivision banning the display of "nude or partially denuded figures posed or presented in a manner to provoke or arouse lust or passion or to exploit sex, lust or perversion for commercial gain or any article or instrument of indecent use.” Plaintiff submits that this standard is so vague that he does not know exactly what it proscribes, and he alleges that he has observed discriminatory enforcement of the ordinance.
Vague standards at the perimeter of the First Amendment *1041 give rise to three dangers: ambiguity leads to applications of the statute directly suppressing protected speech; fear of prosecution — regardless of outcome — casts a chilling effect on expression, causing the wary to " 'steer far wider of the unlawful zone’ ” (New York Times Co. v Sullivan, 376 US 254, 279); and vague statutes are susceptible to inconsistent applications and discriminatory enforcement (Winters v New York, 333 US 507).
In Interstate Circuit v Dallas (390 US 676) decided together with Ginsberg, the court quoted (p 689) with approval Judge Fuld concurring in People v Kahan (15 NY2d 311, 313): "It is * * * essential that legislation aimed at protecting children from allegedly harmful expression — no less than legislation enacted with respect to adults — be clearly drawn and that the standards adopted be reasonably precise so that those who are governed by the law and those that administer it will understand its meaning and application.”
Resolution of this issue is aided considerably by three decisions dealing with the vagueness of New York obscenity statutes. In Rabeck v New York (391 US 462, supra) the court declared void for vagueness former section 484-i of the New York Penal Law, which prohibited the sale of "magazines * * * which would appeal to the lust of persons under the age of eighteen years or to their curiosity as to sex or to the anatomical differences between the sexes”. In People v Bookcase, Inc. 14 NY2d 409, 411 supra) the court invalidated former section 484-h of the Penal Law which prohibited the sale to a minor of "any book * * * the cover or content of which exploits, is devoted to, or is principally made up of descriptions of illicit sex or sexual immorality”. And in Winters v New York (333 US 507, supra) the court struck down language prohibiting the sale of material "which tends to incite minors to violent or depraved or immoral acts.”
It is plain that under these decisions subdivision (J) is impermissibly vague and therefore unconstitutional. The phrase "posed or presented in a manner to provoke lust or passion” is no more specific than the "illicit or immoral” sex standard in People v Bookcase, Inc. (supra) or the "incitement” clause in Winters v New York (supra). Clearly, the fact that the legislature has specifically defined the terms "nude or partially denuded figures” in (J)[3] in no way cures the vagueness of the cited provision, which purports to define the context within which material containing nudity is to be *1042 found obscene. As pointed out in part II of this opinion, this court is not at liberty to construe this provision more narrowly so that it comes within the standard of obscenity upheld in Ginsberg v New York (supra).
More light is shed on this issue by focusing on the striking resemblance that subdivision (J) bears to former section 484-h of the Penal Law which was declared void for vagueness in People v Bookcase, Inc. (supra). The only significant difference between the present ordinance and former section 484-h is that the Buffalo legislature has supplied in (J)[3] specific definitions of the terms "illicit sex or sexual immorality” and "nude or partially denuded figures”. The addition of these definitions fails to cure the vagueness that permeates subdivision (J) as a whole, as indicated above. Furthermore, if the phrase "illicit sex or sexual immorality” is interpreted strickly to mean explicit sex as defined in (J)[3], without regard to context, it is overbroad. Conversely, if that phrase is interpreted to only prohibit the display of explicit sex which is presented in an illicit or immoral fashion, the ordinance sets forth a standard that is impermissibly vague for the same reasons which prompted the decision in People v Bookcase (supra). The conclusion inescapably follows that if subdivision (J) is not unconstitutional for overbreadth, it is unconstitutionally vague.
Based on the reasons set forth in this opinion, subdivisions (J)[l] and (J)[2] of section 35 of chapter 9 of the Buffalo Anti-Obscenity and Display to Minors Ordinance are declared unconstitutional and defendants are permanently enjoined from enforcing any part of these subdivisions. In view of this decision this court does not reach other claims asserted by plaintiff.
Anthony Gregory, Assistant Corporation Counsel, was ordered to submit a memorandum on this matter by November 29, 1976. Mr. Gregory, because of heavy involvement in a school integration case in Federal Court, requested and was granted numerous additional times to file his memorandum. Subsequent thereto Mr. Gregory became ill and just recently returned to work. To date Corporation Counsel has not submitted his Memorandum.