HYMAN CALDERON, Doing Business as NEISNER'S SMOKE SHOP, Respondent, v CITY OF BUFFALO et al., Appellants.

Fourth Department, March 1, 1978

### APPEARANCES OF COUNSEL

*Leslie G. Foschio, Corporation Counsel (Patricia Pancoe* of counsel), for appellants.

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Paul J. Cambria, Jr.,* of counsel), for respondent.

### OPINION OF THE COURT

DENMAN, J.

The plaintiff, Hyman Calderon was approached at his place of business, Neisner's Smoke Shop, by a Buffalo police officer from the Salacious Literature Unit, who advised him that he was selling magazines in violation of section 35 of chapter 9 of the Ordinances of the City of Buffalo (commonly known as the Anti-Obscenity and Display to Minors Ordinance). The officer either refused or was unable to explain to plaintiff exactly what the ordinance prohibited. A number of days later the same officer returned to the smoke shop, bought a magazine entitled *Hustler,* and requested to see another magazine but again indicated to plaintiff that he could not tell him what he was doing that constituted a violation of the ordinance. Two days later the officer returned with a photographer who took pictures of the magazines on display. Plaintiff was told to follow the police officer to police headquarters, where he was charged with violation of the above ordinance. He was arraigned on that charge in the City Court of Buffalo; some

months later the charge was dismissed upon the city's failure to appear for trial.

Plaintiff thereafter initiated an action for declaratory judgment and injunctive relief on the grounds that the sections of the ordinance prohibiting display of certain materials are unconstitutionally broad and vague. Special Term entered judgment holding that paragraphs (1), (2) and (3) of subdivision (j) of section 35 of the Ordinances of the City of Buffalo are unconstitutional and permanently enjoining the city from enforcing them. The City of Buffalo appeals from that judgment.

■ The city raises the issue of plaintiff's standing to institute an action for declaratory judgment, asserting that no justiciable controversy exists, that application of the ordinance to plaintiff is hypothetical, and that plaintiff must await prosecution before he may raise constitutional issues. Although such assertions might have validity in other circumstances, traditional rules of standing have been expanded in the area of First Amendment rights. Where such rights are at stake, litigants "are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression" (Broadrick v Oklahoma, 413 US 601, 612). Nor in this delicate area is a person required to show that his own conduct could not be regulated by a narrow construction of the statute under attack (Dombrowski v Pfister, 380 US 479).

■ Even without the special exception granted litigants seeking to preserve their right of free expression, the applicability to plaintiff of the ordinance in question is plain (see Young v American Mini Theatres, 427 US 50, 61), and he should not be forced to await prosecution on criminal charges before seeking a determination of the law's validity (Bunis v Conway, 17 AD2d 207, mot for lv to app den 17 AD2d 1036).

■ The proper method of testing the constitutional validity of such a statute is by an action for declaratory judgment (Matter of Merced v Fisher, 38 NY2d 557; New York Foreign Trade Zone Operators v State Liq. Auth., 285 NY 272; Dun & Bradstreet v City of New York, 276 NY 198; Bunis v Conway, supra). Inasmuch as petitioner seeks to resolve a First Amendment challenge to an ordinance under which he has once been criminally charged and has been threatened with further

prosecution, the court properly entertained his request for declaratory relief. The reasons for declaratory relief are even more compelling in a situation such as the one here in which threat of prosecution imposes an informal censorship on vendors of books and magazines, thus raising serious questions of prior restraint under the First and Fourteenth Amendments.

█ Our courts have consistently recognized the State's legitimate interest in attempting to stem the tide of commercialized obscenity (see, e.g., *Paris Adult Theatre I v Slaton,* 413 US 49; *Miller v California,* 413 US 15; *Kois v Wisconsin,* 408 US 229; *Jacobellis v Ohio,* 378 US 184; *Roth v United States,* 354 US 476). Threading through the cases which have developed the law on obscenity is an awareness, sometimes articulated, sometimes implied, that rights and interests other than those of the particular litigants must be protected. These include the interests of the community in the quality of life in which we all participate and the tone of the societal atmosphere which we must of necessity share. Indeed, "what is commonly read and seen and heard and done intrudes upon us all, want it or not. 22 The Public Interest 25-26 (Winter 1971)" *(Paris Adult Theatre I v Slaton, supra,* p 59).

Even more compelling than the State's interest in regulating the dissemination of obscenity to the public at large is its interest in protecting children from the onslaught of sexually offensive material. The State may "exercise its power to protect the health, safety, welfare and morals of its community by barring the distribution to children of books recognized to be suitable for adults" *(Ginsberg v New York,* 390 US 629, 636). Despite the continuing and often heated controversy[1] as to what speech, if any, can be prohibited consistently with the First Amendment, there is a general consensus that the healthy emotional development of our young people permits the State to intervene in support of the parental role in preventing young minds from being adversely affected by sexually explicit material with the respect to which they lack mature and discriminating judgment *(Erznoznik v City of Jacksonville,* 422 US 205; *Paris Adult Theatre I v Slaton, supra; Interstate Circuit v Dallas,* 390 US 676; *Ginsberg v New York, supra; People v Tannenbaum,* 18 NY2d 268, app dsmd 388 US 439, reh den 389 US 892; *Bookcase, Inc. v*

---

1. See, e.g., concurring and dissenting opinions in *Paris Adult Theatre I v Slaton,* 413 US 49; *Miller v California,* 413 US 15; *Interstate Circuit v Dallas,* 390 US 676; *Ginsberg v New York,* 390 US 629; *Ginzburg v United States,* 383 US 463.

*Broderick,* 18 NY2d 71, mot to amd remittitur den 18 NY2d 708, 752; *People v Kahan,* 15 NY2d 311). As enunciated by former Chief Judge FULD in his concurring opinion in *People v Kahan (supra,* p 312):

"[T]he Constitution does not secure to them [children] the same, almost absolute, right assured to adults to judge and determine for themselves what they may read and what they should reject.

"While the supervision of children's reading may best be left to their parents, the knowledge that parental control or guidance cannot always be provided and society's transcendent interest in protecting the welfare of children justify reasonable regulation of the sale of material to them. It is, therefore, altogether fitting and proper for a state to include in a statute designed to regulate the sale of pornography to children special standards, broader than those embodied in legislation aimed at controlling dissemination of such material to adults."

■ ■ While enactment of such legislation is within the authority of the State, nevertheless it is "essential that legislation aimed at protecting children from allegedly harmful expression—no less than legislation enacted with respect to adults—be clearly drawn and that the standards adopted be reasonably precise so that those who are governed by the law and those that administer it will understand its meaning and application. It is equally important that such legislation be drawn so as not to bring about the suppression of the sale to adults of material that is, in fact, constitutionally protected. (See *Butler v Michigan,* 352 US 380 * * *)" *(People v Kahan, supra,* p 313). With these principles in mind, we examine the ordinance before us.

"(j) Sale or exhibition to minors of indecent publications, pictures or articles.

"(1) No person within the city of Buffalo shall willfully or knowingly engage in the business of selling, lending, giving away, showing, advertising for sale or distributing to any person under the age of seventeen (17) years or have in his possession with intent to engage in the said business or to otherwise offer for sale or commercial distribution to any individual under the age of seventeen (17) years any pornographic motion picture, or any still picture or photograph or any book, pocketbook, pamphlet or magazine the cover or content of which exploits, is devoted to, or is principally made

up of descriptions or depictions of illicit sex or sexual immorality or which is obscene, lewd, lascivious, or indecent, or which consists of pictures of nude or partially denuded figures posed or presented in a manner to provoke or arouse lust or passion or to exploit sex, lust or perversion for commercial gain or any article or instrument or indecent or immoral use.

"(2) No person within the city of Buffalo shall display at newsstands or any other business establishment frequented by minors under the age of seventeen (17) years or where said minors are or may be invited as a part of the general public any pornographic motion picture, or any still picture or photograph or any book, pocketbook, pamphlet or magazine the cover or content of which exploits, is devoted to, or is principally made up of descriptions or depictions of illicit sex or sexual immorality or which is obscene, lewd, lascivious, or indecent, or which consists of pictures of nude or partially denuded figures posed or presented in a manner to provoke or arouse lust or passion or to exploit sex, lust or perversion for commercial gain or any article or instrument of indecent use.

"(3) For the purposes of this subsection 'descriptions or depictions of illicit sex or sexual immorality' shall mean:

"a. Human genitals in a state of sexual stimulation or arousal;

"b. Acts of human masturbation, sexual intercourse or sodomy;

"c. Fondling or other erotic touching of human genitals, pubic region, buttocks or female breast.

" 'Nude or partially denuded figures' shall mean:

"a. Less than completely and opaquely covered (a) human genitals, (b) pubic regions, (c) buttocks and (d) female breast below a point immediately above the top of the areola; or

"b. Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

" 'Knowingly' shall mean having knowledge of the character and content of the publication or failure on notice to exercise reasonable inspection which would disclose the content and character of the same."

In *Bookcase Inc. v Broderick* (18 NY2d 71, *supra)* the Court of Appeals found former section 484-h of the Penal Law (presently § 235.20) to be a valid prohibition on dissemination of sexually explicit material to minors. Relying on *Mishkin v New York* (383 US 502), the court found (p 75) that "the

concept of obscenity or of unprotected matter may vary according to the group to whom the questionable material is directed or from whom it is quarantined". Thus, said the court, the statute, in assessing the sex-related materials in terms of a precise, three-point test—(1) predominantly appeals to the prurient, shameful or morbid interest of minors, (2) is patently offensive to prevailing standards of what is suitable for minors, and (3) is utterly without redeeming social importance—a definition adapted from the Supreme Court's then most recent statement of the elements of obscenity (*Memoirs v Massachusetts,* 383 US 413, 418)[2] met the problem of protecting young people from sordid literature but did not reduce adults to reading only what is fit for children.

The concept of "variable obscenity" enunciated in *Bookcase (supra)* was adopted by the Supreme Court in *Ginsberg v New York (supra)* in reviewing the same statute. The court affirmed Ginsberg's conviction for selling "girlie magazines" to a minor and found that the statute's adjustment of the definition of obscenity on the basis of its appeal to minors under 17 was a constitutionally permissible limitation on what can be exhibited or sold to children.

■ If the challenged ordinance is to pass constitutional muster, it must define the materials proscribed in a manner similar to that upheld in *Bookcase* and *Ginsberg,* set forth above, which it might easily do. We observe that while subdivision (g) of the ordinance, prohibiting sales to minors, is explicitly and clearly conditioned on standards "harmful to minors" similar to those in *Bookcase* and in sections 235.20, 235.21 of the Penal Law, the challenged provision is not. The absence of any requirement that the material be "harmful to minors" makes subdivision (j) fall short of the variable obscenity standard mandated by *Ginsberg.* Additionally, an affirmative defense available under subdivision (g) (for dissemination or conduct in the course of law enforcement activities or in bona fide scientific, educational, or comparable research or study) does not apply to subdivision (j). We therefore conclude that subdivision (j) is unconstitutionally overbroad in that it includes material not obscene as to either minors or adults and thus entitled to First Amendment protection.

■ ■ In addition to the problem of overbroadness, the

---

2. Section 235.20 of the Penal Law carries forward essentially the same test but has been amended to reflect the prevailing definition of obscenity.

ordinance is unconstitutionally vague. Legislation carrying penal sanctions must be definite enough to give persons of ordinary intelligence a reasonable opportunity to know what is prohibited and must provide explicit standards in order to prevent arbitrary and discriminatory enforcement *(Grayned v City of Rockford,* 408 US 104, 108). It is essential that even legislation aimed at protecting children be drawn with such clarity and specificity that those governed by it and those who administer it will clearly understand its meaning and application *(Interstate Circuit v Dallas,* 390 US 676, *supra; People v Kahan,* 15 NY2d 311, 313, *supra;* and see *Rabeck v New York* [391 US 462] invalidating former section 484-i of the New York Penal Law for vagueness).

Special Term correctly found that the definitions in paragraph (3) of subdivision (j) do not make the ordinance appreciably more definite than the statute found unconstitutionally vague in *People v Bookcase, Inc.* (14 NY2d 409) ("any book * * * the cover or content of which exploits, is devoted to, or is principally made up of descriptions of illicit sex or sexual immorality") (90 Misc 2d 1033, 1041). Furthermore, as to the prohibitions against materials which are "obscene, lewd, lascivious, or indecent," only "obscene" is defined and the other terms are open to a wide range of interpretations, particularly the word "indecent". The language of the final category of materials, those consisting of "nude or partially denuded figures posed or presented in a manner to provoke or arouse lust or passion" is similar to that stricken for vagueness in *Rabeck v New York* (14 NY2d 409, 411, *supra)* ("any * * * magazines * * * which would appeal to the lust of persons under the age of eighteen years or to their curiosity as to sex or to the anatomical differences between the sexes").

In holding these provisions unconstitutionally broad and vague, we nevertheless reaffirm our support for the exigent interest of localities throughout the State and Nation in preventing the dissemination of material deemed harmful to children. In the words of former Chief Judge DESMOND: "[O]bscenity, real, serious, not imagined or puritanically exaggerated, is today as in all the past centuries, a public evil, a public nuisance, a public pollution. When its effective control requires censorship, I see no reason why democratic government should not use democratic processes on a high administrative level, under the control of the courts, to suppress such obscenity" (Desmond, *Legal Problems Involved in Censoring*

*the Media of Mass Communication,* 40 Marquette L Rev 38, 56 [1956]).

The judgment should be affirmed.

MOULE, J. P., SIMONS, DILLON and HANCOCK, JR., JJ., concur.

Judgment unanimously affirmed, without costs.