Keating, J.
Appellants challenge the power of the State to prohibit sales, to persons below a certain age, of literature not “ obscene ” within existing judicial standards for suppression of sales to the general public.
In 1963, appellant Bookcase, Inc., was prosecuted for selling a book, “ The Memoirs of a Woman of Pleasure ” (better known as “ Fanny Hill ”), to a person under the age of 18 in violation of former section 484-h which prohibited sales to persons under 18 of any book “ the cover or content of which exploits, is devoted to, or is principally made up of descriptions of illicit sex or sexual immorality ”. Though the defendant was convicted initially, the judgment was later reversed and former section 484-h was held uneonstitutiojial (People v. Bookcase, Inc., 14 N Y 2d 409).
*73 In response to the rulings of this court in Bookcase (supra) and in People v. Kahan (15 N Y 2d 311), the Legislature in 1965 added the present section 484-h (L. 1965, ch. 327) which has the same objective but is far more detailed and applies to those under 17, and section 484-i (L. 1965, ch. 372) which is a similar provision for persons under the age of 18.
Appellants are now seeking a judgment declaring these new sections unconstitutional. Their challenge, however, is limited solely to the power of the State to pass such statutes. They are not challenging (as they did in Bookcase, supra) the particular statutes on grounds of vagueness, lack of proper scienter requirements, and other problem areas normally involved in a constitutional challenge to the validity of obscenity laws.[1]
This court -held in Larkin v. Putnam’s Sons (14 N Y 2d 399) that “ Fanny Hill ” was not obscene and could be sold to the general public, but appellants admit that the book does fall within the prohibition of sections 484-h and 484-i as regards sales to persons under 17 or 18. Appellants argue that such a distinction on the basis of age is an unconstitutional infringement upon the freedom of the press.
The decisions of the Supreme Court of the United States and of this court have indicated that a concept of variable obscenity for the protection of children, in a properly drawn statute, is not only within the power of our Legislature but is a desirable and even necessary provision. The statutes in question embody that concept and we uphold the validity of such a concept.
Appellants’ challenge stems from the' following- Supreme Court statement: “ Our holding in Roth[2] does not recognize any state power to restrict the dissemination of books which are not obscene ”. (Smith v. California, 361 U. S. 147, 152.) Since, appellants argue, this court has ruled that “ Fanny Hill ” is not obscene, its distribution is protected and the statutes restricting its dissemination are unconstitutional. It is worthwhile, therefore, to go back to Both and trace the development in the Supreme Court of the concept of obscenity.
*74 Roth was heard and decided together with Alberts v. California, one being a violation of a Federal obscenity statute and one a State statute. In upholding both convictions, the Supreme Court stated that obscenty was outside the constitutional protection intended for speech and the press and defined obscene material as that which deals with sex in a manner appealing to the prurient interest; that is, material having a tendency to excite lustful thoughts and utterly without redeeming social importance. The test was said to be “ whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest ” (Roth, supra, p. 489).
After Smith (supra), in which the court shed additional light on the Roth tests, the court, in Jacobellis v. Ohio (378 U. S. 184), held that under its tests for obscenity a certain film was not obscene and, therefore, a conviction under a State statute for exhibiting it to the general public could not be sustained. Indicative of the lack of certainty in this area was the fact that no majority opinion could be agreed upon and' no less than six separate opinions and one concurrence without opinion were filed. Nevertheless, though there was disagreement on the Both tests and its application to the particular film and statute in question, certain principles were gleaned, upon which a majority of the Justices appeared to agree.
The opinion of Mr. Justice BreiwaN, who wrote for the court in Both and Smith, concurred in by Mr. Justice Ctoudeerg, contained the following suggestion to the States: “ Wé recognize the legitimate and indeed exigent interest of States and localities throughout the Nation in preventing the dissemination of material deemed harmful to children. But that interest does not justify a total suppression of such material, the effect of which would be to ‘ reduce the adult population * * * to reading only what is fit for children.’ Butler v. Michigan, 352 U. S. 380, 383. State and local authorities might well consider whether their objectives in this area would be better served by laws aimed specifically at preventing distribution of objectionable material to children, rather, than at totally prohibiting its dissemination.” (Jacobellis, supra, p. 195; emphasis added.) Since the conviction in question was for exhibition at large and not merely to children, the judgment, according to Mr. Justice *75 Brennan, had to be reviewed tinder the strict standard, applicable on a national basis. The implication was that in a statute limited to “distribution of objectionable material to children” State or local interests would be determinative.
In a dissenting opinion concurred in by Mr. Justice Clark, the Chief Justice recognized that the use to which materials are put — not the words or pictures themselves — must be considered in determining obscenity. “ A technical or legal treatise on pornography may well be inoffensive under most circumstances but, at the same time, ‘ obscene ’ in the extreme when sold or displayed to children ” (supra, p. 201).
Finally, in the recent case of Mishkin v. New York (383 U. S. 502), appellant argued that the books in question did not satisfy the prurient-appeal requirement because they did not appeal to the prurient interest of the average person. The court rejected the argument as being an unrealistic interpretation of the requirement: “Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the Roth test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group. * * * We adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interests of its intended and probable recipient group ” (supra, pp. 508-509).
The clear .implication of these cases is that material which is protected- for distribution to adults is not necessarily constitutionally protected from restriction upon its dissemination to children. In other words, the concept of obscenity or of unprotected matter may vary according to the group to whom the questionable material is directed or from whom it is quarantined. Because of the State’s exigent interest in preventing distribution to children of objectionable material, it can exercise its power to protect the health, safety, welfare and morals of its community by barring the distribution to children of books recognized to be suitable for adults.
The decisions of our own court point to a similar result. In. Bookcase we struck down the predecessor of section 484-h because it was too broad and too obscure in its coverage, but we *76 did not challenge the power oE the Legislature to provide different standards for children. (See dissenting opinion per Scileppi, J., p. 424.)
This was spelled ont more clearly in People v. Kahan (supra, pp. 311-312) where the Per Curiam opinion repeated that Bookcase ‘ ‘ implied that a constitutionally valid statute defining obscenity in its impact on the young, as distinguished from obscenity in respect of adults, might emerge under careful draftsmanship.” Judge Fuld added in his concurring opinion:' ‘ ‘ I have no doubt that such a law, punishing the sale or distribution to children of matter deemed objectionable, under criteria that would not be permissible if applied to adults, may be drafted so as not to violate the constitutional guarantees of freedom of expression ” (p. 312).
The fact that sections 484-h and 484-i do not employ the word “ obscene ” itself does not mean that they are attempting to restrict constitutionally protected materials. There is no magic in the word “ obscene.” The Supreme Court has used it as a shorthand for those matters beyond the protection of the First Amendment and has attempted to define it. That court itself, however, has recognized not only that its success in defining “ obscene ” is limited but also that by necessity such definition must be somewhat imprecise and elastic.
The fact is that the new statutes attempt to state an even more precise definition of what is beyond the First Amendment protection than does the mere shorthand term, “ obscene ”. For example, section 484-h uses, instead of the word “ obscene ”, a three-point definition — (1) predominantly appeals to the prurient, shameful or morbid interest of minors, (2) is patently offensive to prevailing standards of what is suitable for minors, and (3) is utterly without redeeming social importance — which is virtually identical to the Supreme Court’s most recent statement of the elements of obscenity. (Memoirs v. Massachusetts, 383 U. S. 413, 418.)
It is clear that there is no such thing as “ obscenity in the air ’ ’— that is, obscene matter does not exist in a vacuum but can be found only by reference either to the group to whom the matter is directed or from whom it is barred. The Supreme Court has used as its reference point the entire adult community when dissemination was to the public at large and a particular deviant *77 group when the materials were primarily designed and disseminated to that group. (See, also, United States v. 31 Photographs, 156 F. Supp. 350 [U. S. Dist. Ct., S. D., N. Y., 1957].) When the “ adult only ” type of statute is tested, as here, the reference point is the community of minors.
Since, then, material is not inherently “ obscene ” or unprotected, but its obscenity varies with the circumstances of its dissemination, the fact that “Fanny Hill” was deemed not obscene for sale to the general public in New York should in no way preclude a determination that it is harmful to minors or “ obscene ” as regards the community of those below 17. This type of solution meets the problems both of protecting our young from the impact of sordid literature and at the same time protecting mature adults from deprivation of material that is not obscene to them.
Appellants, however, challenge the assumption that children need any special care or concern. They argue that constitutional freedoms know no bounds according to age, that the mind of the child is not to be nurtured under the banner of the State, and that approval of these statutes would be a long and dangerous step toward sanctioning government control over ideas and thoughts — the censoring of literature, then religion, and then political ideologies for fear they would ‘ ‘ harm ’ ’ children.
We find it unnecessary to review the various State and Federal hearings placed before us in Boohcase which “ amply demonstrate the damaging effect sordid pictorial and written sex literature have upon the development in children of a wholesome attitude and outlook on this very important area of life ” (dissenting opinion per Btjkke, J., p. 422), but we do point out that our own Legislature has declared by law that such literature is “ a contributing factor to juvenile crime, a basic factor in impairing the ethical and moral development of our youth and a clear and present danger to the people of the state” (Penal Law, § 484-e).
As for the charge that our Legislature will become a monstrous censor, outlawing the theory of evolution and what not, we prefer to think better of our elected representatives and see no need to act in apprehension of such censorship. While our country was founded upon, and has thrived on, the unlimited exposure to all forms of religious and political ideologies, we *78 know of no eommitme'iit in all of our history — -from the Massachusetts Bay Colony to the freedom movements of today — to the exposure of our young to all forms of lust, perversion and sadism. As the Chief Judge has written: “ Obscenity, real, serious, not imagined or puritanically exaggerated, is today as in all the past centuries, a public evil, a public nuisance, a public pollution. When its effective control requires censorship, I see no reason why democratic government should not use democratic processes on a high administrative level, under the control of the courts, to suppress such obscenity.” (Desmond, Legal Problems Involved in Censoring the Media of Mass Communication, 40 Marquette L. Rev. 38, 56 [1956].)
The Legislature, after many years of careful study, has decided that certain kinds of written matter, though suitable for adult consumption, should be kept away from children. A prior statute with that objective was ruled unconstitutional for vagueness. The challenge here to sections 484-h and 484-i does not include such grounds. We hold only that the Legislature has the constitutional power to pass such a statute. Questions of vagueness and scienter requirements must await other cases.
The judgment below should be affirmed, with costs.
Chief Judge Desmond and Judges Burke, Scileppi and Bergan concur with Judge Keating; Judge Fuld concurs in result; Judge Yan Voobhis dissents and votes to reverse upon the ground that jurisdiction should not be assumed to render declaratory judgment of a question of constitutionality in the abstract without ruling upon the validity of any particular statute.
Judgment affirmed.

. Appellant in People v. Tannenhaum on appeal in this court does challenge section 484-i on grounds of vagueness and lack of proper scienter requirements.

. Roth v. United States (354 U. S. 476).