**TATTERED COVER, INC., a Colorado corporation, d/b/a Tattered Cover Bookstore; Joyce Knauer; Pioneer Ventures, Inc., a Colorado corporation, d/b/a Columbine Books and Records; Larry Hamilton; American Booksellers Association, Inc.; Association of American Publishers, Inc., a New York corporation, and Council For Periodical Distributors Associations, Plaintiffs-Appellees, Cross-Appellants,**

v.

**Dale TOOLEY, District Attorney, Second Judicial District; Arthur Dill, Chief of Police, Denver Police Department; and Jerry Kennedy, Captain, Vice Squad, Denver Police Department, Defendants-Appellants, Cross-Appellees.**

No. 82SA85.

Supreme Court of Colorado, En Banc.

Feb. 25, 1985.

Rehearing Denied April 1, 1985.

Peter H. Ney, Littleton, Finley, Kumble, Wagner, Heine, Underberg & Casey, Jeffrey A. Mitchell, Michael A. Bamberger, New York City, for plaintiffs-appellees, cross-appellants.

Norman S. Early, Jr., Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., David Purdy, Chief Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, for defendants-appellants, cross-appellees.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard Forman, Sol. Gen., John Milton Hutchins, Asst. Atty. Gen., Denver, for amicus curiae, Colorado Attorney General.

NEIGHBORS, Justice.

This is an appeal from the judgment of the Denver District Court declaring that sections 18–7–502(5) and 18–7–503, 8 C.R.S. (1984 Supp.), are unconstitutional and severing them from the remainder of the provisions governing "Sexually Explicit Materials Harmful to Children" (the Act), sections 18–7–501 to –504, 8 C.R.S. (1984 Supp.).[1] The plaintiffs[2] request reversal of the trial court's order severing the invalid provisions rather than declaring the entire Act unconstitutional. The defendants[3] seek review of the declarations of unconstitutionality. We affirm the trial court's decision that the challenged provisions are unconstitutional but reverse its ruling that the offending provisions are severable from the Act. Accordingly, we hold the Act unconstitutional.

### I.

In their complaint, the plaintiffs requested that the Act be declared unconstitutional because it violated their rights of free speech and expression and rights to due process and that the defendants be enjoined from enforcing the Act. At trial, the plaintiffs introduced testimony from booksellers and publishers to the effect that the Act is vague and difficult to apply and that any method of separating the books and magazines so that children would not be able to view sexually explicit materials would interfere with adults' exercise of their rights of free speech and expression.

---

1. The full text of the Act which was in effect when this case was filed in the district court is found in the 1981 Session Laws of Colorado at chapter 225 beginning on page 1004. The statutes contained in the 1984 Supplement to the 1978 Replacement Volume 8 are identical to the Act adopted in 1981. The 1981 Act is attached as Appendix A.

2. The plaintiffs are two bookstores and their managers, and booksellers' and publishers' trade associations.

3. The defendants are the former District Attorney for the City and County of Denver, the Denver Police Department, and two of its officials.

The parties stipulated to several possible methods of complying with the Act: (1) prohibiting entry into the plaintiffs' stores of persons under the age of eighteen; (2) refusing to carry or display all sexually explicit material; (3) refusing to carry or display material proscribed by the Act; (4) restricting access to substantial portions of their material by segregating sections of their establishment with an "adults only" section; and (5) establishing an "adults only" section solely for material proscribed by the Act. The trial court found that "any of the foregoing alternatives would not be commercially ... feasible or sound." The trial court concluded that section 18–7–502(5), the display provision, is unconstitutional:

[A] literal enforcement of this statute would impinge upon the constitutional rights of adults. It is admitted that the adults would have the right under the laws that now exist to view the material that is set forth in the statute we are considering. The problem is the chilling effect that literal enforcement of a criminal statute such as this have [sic] on the channels of dissemination. The court specifically finds and concludes that the statute effectively closes the channels of dissemination. The court specifically would find that the application of this display part of the statute would interfere, diminish and severely curtail the unfettered expression and interchange, *inter alia*, of literary, artistic, political and scientific ideas which are found in the human interest in sex. Enforcing this provision ... would be a regulation to an unreasonable degree and unconstitutional in violation of the First Amendment to the United States Constitution and Article II, Section 10 of the Constitution of the State of Colorado.

The court also declared section 18–7–503, the exemption provision, unconstitutional. The court stated:

C.R.S. 1973, 18–7–503 provides for an exemption of the applicability of the remaining parts of the statute to so-called accredited museums, libraries, schools or institutions of higher learning. The court finds that such exemption is entirely too vague, too broad and overreaching.

Applying the general statutory rules of interpretation including a strict scrutiny test the court hereby finds and determines that the section is likewise invalid and unconstitutional in violation of the due process and equal protection clauses of the United States and Colorado Constitutions. The court therefore declares C.R.S. 1973, 18–7–503 unconstitutional and invalid.

The district court then applied the qualified severability statute found in section 18–7–504 of the Act to its determinations of unconstitutionality and concluded that the offending provisions were severable. The court upheld the remaining provisions in the Act and the defendants appealed. The plaintiffs then cross-appealed. Accordingly, four issues are presented for our consideration: (1) Whether the display provision in section 18–7–502(5) is constitutional; (2) whether the word "accredited" in section 18–7–503 is unconstitutionally vague; (3) whether the exemption provision denies plaintiffs' equal protection guarantees; and (4) whether the exemption and display provisions can be severed from the Act.

## II.

The state's interest in protecting the well-being of children permits the state greater latitude in adopting restrictions which limit children's access to sexually explicit materials than can be imposed on adults. *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). In *Ginsberg,* the Court upheld a statute regulating the sale, *not display,* of sexually explicit materials to persons under seventeen years of age. The Court stated:

[M]aterial which is protected for distribution to adults is not necessarily constitutionally protected from restriction upon its dissemination to children. In other words, the concept of obscenity or of unprotected matter may vary according to the group to whom the questionable matter is directed or from whom it is quarantined. Because of the State's exigent interest in preventing distribution to children of objectionable material, it

can exercise its power to protect the health, safety, welfare and morals of its community by barring the distribution to children of books recognized to be suitable for adults.

*Ginsberg,* 390 U.S. at 636, 88 S.Ct. at 1278 (quoting *Bookcase, Inc. v. Broderick,* 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668, 671 (1966)). In *People v. Enea,* 665 P.2d 1026 (Colo.1983), we upheld the constitutionality of the statute prohibiting the sexual exploitation of children, section 18–6–403, 8 C.R.S. (1984 Supp.). In that opinion, we noted the variable obscenity standard which permits "states to ban the sale to minors of materials deemed legally obscene as to children, but not to adults...." *Enea,* 665 P.2d at 1028. *See also F.C.C. v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978). The parties agree that the materials involved in this case are not obscene as defined in section 18–7–101, 8 C.R.S. (1984 Supp.); rather, they are protected under the first amendment of the United States Constitution and article II, section 10 of the Colorado Constitution. Therefore, only reasonable regulations of the time, place, and manner of protected speech, where those regulations are necessary to further a compelling government interest, are permitted by the federal and state constitutions. *Young v. American Mini Theaters, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Marco Lounge, Inc. v. City of Federal Heights,* 625 P.2d 982 (Colo.1981).

It is within this analytical framework that the display provision in section 18–7–502(5) must be evaluated. Section 18–7–502(5) provides:

(5) It shall be unlawful for any person knowingly to exhibit, expose, or display in public at newsstands or any other business or commercial establishment frequented by children or where children are or may be invited as part of the general public:

(a) Any picture, photograph, drawing, sculpture, motion picture film, or similar

visual representation or image of a person or portion of the human body which depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse and which is harmful to children; or

(b) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in paragraph (a) of this subsection (5), or explicit verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sadomasochistic abuse and which, taken as a whole, is harmful to children.

The plaintiffs' principal contention is that this provision is objectionable, not because it prohibits sale or display of certain materials to children, but rather because in doing so it infringes upon the free speech rights of adults. This is so, they claim, because there is no reasonable way for a commercial establishment to prohibit children from being exposed to material "harmful to children" while allowing adults access to such material.

■■ We conclude that this provision is overly broad. Statutes designed to restrict children's access to sexually explicit materials must be narrowly drawn. As we noted earlier, the Supreme Court in *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), upheld a statute which prohibited the sale of such materials to minors. However, the state cannot prevent adults from reading or having access to these materials on the ground they would be objectionable if read or seen by children. In *Butler v. Michigan,* 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957), the Court declared unconstitutional a statute which made it an offense to make available to the general public sexually explicit materials found to have a potentially harmful influence on minors. Thus, in *American Booksellers Association v. McAuliffe,* 533 F.Supp. 50 (N.D.Ga.1981), the court declared unconstitutional a display provision similar to the one involved in this case.[4]

**4.** The court summarized the display provision and identified the overbreadth problem:

Under the Act: *"It shall be unlawful for any person* knowingly ... *to display in public* or

The court stated: "However, an examination of the Act reveals that it infringes on the protected rights of adults. The language includes a public display prohibition which necessarily prevents perusal by, and limits sale to, adults." *McAuliffe*, 533 F.Supp. at 56. The Supreme Court has never upheld the validity of a "display provision" as broad as the one involved in this litigation.

■ The evolving rule concerning the validity of display regulations is this: A display provision will be upheld if it is so narrowly drawn that it has only an incidental effect on the booksellers' right to sell adult materials and an adult's ability to purchase them. *M.S. News Co. v. Casado*, 721 F.2d 1281 (10th Cir.1983); *Dover News, Inc. v. City of Dover*, 117 N.H. 1066, 381 A.2d 752 (1977). *See also Young v. American Mini Theaters*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

■ In the context of this case, the parties stipulated to five alternative ways which might have been available to the plaintiffs in order to comply with the statute. The trial court, however, found that none were commercially feasible. This factual determination is supported by ample evidence in the record. Accordingly, it is binding on appeal. *People v. Fish*, 660 P.2d 505 (Colo.1983); *Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979). Therefore, in light of the factual determinations made by the trial court, we conclude that section 18–7–502(5), 8 C.R.S. (1984 Supp.), is unconstitutional.

### III.

We next review the trial court's ruling that the word "accredited" in section 18–7–503 is unconstitutional. Section 18–7–503 contains the following exemptions to the Act:

... any ... business establishment frequented by minors or where minors may be invited as part of the general public," certain defined materials "the cover or content of which" contains the proscribed "descriptions or depictions." Code § 26–3502 (emphasis added). If any of the proscribed descriptions or de-

18–7–503. Applicability. (1) Nothing contained in this part 5 shall be construed to apply to:

(a) The purchase, distribution, exhibition, or loan of any work of art, book, magazine, or other printed or manuscript material by any accredited museum, library, school, or institution of higher education;

(b) The exhibition or performance of any play, drama, tableau, or motion picture by any theatre, museum, school, or institution of higher education, either supported by public appropriation or which is an accredited institution supported by private funds.

■ In *People ex rel. Tooley v. Seven Thirty-Five East Colfax, Inc.*, 697 P.2d 348, 357 (Colo.1985), we held that the word "accredited" was void for vagueness in the context of Colorado's obscenity statute. We reach the same result here for the identical reasons stated in our opinion in that case. Thus, we hold that the word "accredited" contained in section 18–7–503 is unconstitutionally vague.

### IV.

The trial court held that the exemption provision provided by section 18–7–503 denied the plaintiffs equal protection of the law under both federal and state constitutions. We agree with its conclusion.

Our analysis begins with the recognition that the materials involved in this case are not obscene and are therefore protected by the freedom of speech guarantee embodied in the first amendment to the United States Constitution and article II, section 10 of the Colorado Constitution.

■ Freedom of speech is a fundamental constitutional right. *E.g., Stromberg v. California*, 283 U.S. 359, 51 S.Ct. '

pictions are contained in the cover or in even an isolated part of a work, then the entire work may not be displayed where minors may frequent or be invited as part of the general public.
*American Booksellers Ass'n v. McAuliffe*, 533 F.Supp. 50, 55 (N.D.Ga.1981).

532, 75 L.Ed. 1117 (1931); *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). Since first amendment rights, including free speech, have been held to be fundamental, the classifications in terms of the ability to exercise those rights must be judged against the strict scrutiny standard. *Speiser v. Randall*, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). Where a fundamental right is affected, the state has the burden of establishing that the act is necessarily related to a compelling governmental interest. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Austin v. Litvak*, 682 P.2d 41 (Colo.1984); *Lujan v. Colorado State Board of Education*, 649 P.2d 1005 (Colo.1982).

■ The deletion of the word "accredited" from the exception provision creates a classification distinguishing, on the one hand, private, commercial bookstores, and, on the other, museums, libraries, and bookstores operated by schools, colleges and universities. Under the exception provision, the entities in the latter group may sell or loan materials proscribed by the statute but the former class may not.[5] We conclude that there is no compelling or overriding justification shown by the state in this case which supports the classification. Therefore, the exception provision, section 18–7–503, 8 C.R.S. (1984 Supp.), violates the plaintiffs' rights to equal protection under the United States [6] and Colorado Constitutions [7] and is unconstitutional. *See Seven Thirty-Five East Colfax, Inc.*, 697 P.2d at 357 n. 12.

## V.

We now address the severability issues in light of our holdings that section 18–7–502(5) and 18–7–503 are unconstitutional. We conclude that the offending provisions are not severable from the remainder of the Act.

In *Seven Thirty-Five East Colfax, Inc.*, 697 P.2d at 371, we enunciated the principles applicable to our consideration of the effect of qualified severability statutes. The Act here contains such a provision. Section 18–7–504 states:

18–7–504. **Severability.** If any provision of this part 5 or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions of this part 5 which may be given effect without the invalid provision or application, and, to this end, the provisions of this part 5 are declared to be severable.

■ Even though we held that the word "accredited" was unconstitutional, we declined to strike down the entire exception provision in *Seven Thirty-Five East Colfax, Inc.* In contrast, the entire exception statute here has been declared unconstitutional on equal protection grounds. Part of the rationale for our decision not to invalidate the exception statute in *Seven Thirty-Five East Colfax, Inc.* is equally applicable to this appeal. To sever the exemption provision from the Act would subject to criminal liability a class of facilities and institutions which the legislature sought to exclude from coverage and would be contrary to clearly expressed legislative intent. *Seven Thirty-Five East Colfax, Inc.*, 697 P.2d at 372. Accordingly, the qualified severability statute in the Act here does not provide a satisfactory basis upon which to uphold the validity of the remainder of its provisions. Moreover, we are persuaded that the General Assembly would not have adopted the Act if the display and exemption provisions had not been included in House Bill 1310.[8] Therefore, we conclude that the Act is unconstitutional.

---

**5.** The record, through the testimony of a bookstore manager, reflects the following examples of books displayed and for sale at the Auraria Book Center, the college bookstore for the Auraria campus, which could not be sold by the plaintiffs in their establishments: *The Joy of Sex, The Joy of Lesbian Sex, The Joy of Gay Sex,* and *Where Did I Come From?*

**6.** U.S. Const. amend. XIV.

**7.** Colo. Const. art. II, § 25.

**8.** The evidence supporting this determination comes from two sources. We assume that the considerations which prompted the General Assembly to include the exemption provision in

The judgment of the district court is affirmed in part and reversed in part. This case is remanded to the trial court for further proceedings consistent with this opinion.

APPENDIX A

PART 5

SEXUALLY EXPLICIT MATERIALS HARMFUL TO CHILDREN

**18–7–501. Definitions.** As used in this part 5, unless the context otherwise requires:

(1) "Child" means a person under the age of eighteen years.

(2) "Harmful to children" means that quality of any description or representation, in whatever form, of sexually explicit nudity, sexual conduct, sexual excitement, or sadomasochistic abuse, when it:

(a) Taken as a whole, predominantly appeals to the prurient interest in sex of children;

(b) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for children; and

(c) Is, when taken as a whole, lacking in serious literary, artistic, political, and scientific value for children.

(3) "Knowingly" means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry, or both, of:

(a) The character and content of any material described herein which is reasonably susceptible of examination; and

(b) The age of the child; however, an honest mistake shall constitute an excuse from liability hereunder if a reasonable bona fide attempt is made to ascertain the true age of such child.

(4) "Sadomasochistic abuse" means actual or explicitly simulated flagellation or torture by or upon a person who is nude or clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound, or otherwise physically restrained on the part of one so clothed.

(5) "Sexual conduct" means actual or explicitly simulated acts of masturbation, homosexuality, sexual intercourse, sodomy, or physical contact in an act of apparent sexual stimulation or gratification with a person's clothed or unclothed genitals, pubic area, buttocks or, if such be female, breast.

(6) "Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

(7) "Sexually explicit nudity" means a state of undress so as to expose the human male or female genitals, pubic area, or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the areola, or the depiction of covered or uncovered male genitals in a discernibly turgid state.

**18–7–502. Unlawful acts.** (1) It shall be unlawful for any person knowingly to sell or loan for monetary consideration to a child:

(a) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse and which, taken as a whole, is harmful to children; or

the obscenity statute as described in *People ex rel. Tooley v. Seven Thirty-Five East Colfax, Inc.,* 697 P.2d 357, 357 n. 13 (Colo.1985), are identical. With regard to the display provision, our review of the legislative history indicates that House Bill 1310 was disapproved and vetoed by the Governor on June 5, 1981. The Governor's veto message reflects his position that the display provision was unconstitutional. Colo. H.J.,

53rd Gen. Ass'y. 1st Sess. 2263 (June 5, 1981). Rather than deleting the display provision, both the House and the Senate passed the bill over the Governor's veto on June 29, 1981. Colo. H.J., 53rd Gen. Ass'y. 1st Sess. 2328–29 (June 29, 1981); Colo.S.J., 53rd Gen.Ass'y. 1st Sess. 2597–98 (June 29, 1981).

(b) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in paragraph (a) of this subsection (1), or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sadomasochistic abuse and which, taken as a whole, is harmful to children.

(2) It shall be unlawful for any person knowingly to sell to a child an admission ticket or pass, or knowingly to admit a child to premises whereon there is exhibited a motion picture, show, or other presentation which, in whole or in part, depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse and which is harmful to children or to exhibit any such motion picture at any such premises which are not designed to prevent viewing from any public way of such motion picture by children not admitted to any such premises.

(3) It shall be unlawful for any child falsely to represent to any person mentioned in subsection (1) or (2) of this section, or to his agent, that he is eighteen years of age or older, with the intent to procure any material set forth in subsection (1) of this section, or with the intent to procure his admission to any motion picture, show, or other presentation, as set forth in subsection (2) of this section.

(4) It shall be unlawful for any person knowingly to make a false representation to any person mentioned in subsection (1) or (2) of this section, or to his agent, that he is the parent or guardian of any juvenile, or that any child is eighteen years of age or older, with the intent to procure any material set forth in subsection (1) of this section, or with the intent to procure any child's admission to any motion picture, show, or other presentation, as set forth in subsection (2) of this section.

(5) It shall be unlawful for any person knowingly to exhibit, expose, or display in public at newsstands or any other business or commercial establishment frequented by children or where children are or may be invited as part of the general public:

(a) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse and which is harmful to children; or

(b) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in paragraph (a) of this subsection (5), or explicit verbal description or narrative accounts of sexual excitement, sexual conduct, or sadomasochistic abuse and which, taken as a whole, is harmful to children.

(6) A violation of any provision of this section is a class 2 misdemeanor.

**18-7-503. Applicability.** (1) Nothing contained in this part 5 shall be construed to apply to:

(a) The purchase, distribution, exhibition, or loan of any work of art, book, magazine, or other printed or manuscript material by any accredited museum, library, school, or institution of higher education;

(b) The exhibition or performance of any play, drama, tableau, or motion picture by any theatre, museum, school, or institution of higher education, either supported by public appropriation or which is an accredited institution supported by private funds.

**18-7-504. Severability.** If any provision of this part 5 or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions of this part 5 which may be given effect without the invalid provision or application, and, to this end, the provisions of this part 5 are declared to be severable.