OPINION OF THE COURT
William A. Kelly, J.
The People have moved this court to dismiss the charge of public display of offensive sexual material (Penal Law § 245.11) pending against the defendant on the ground that the offensive materials do not fall within the proscription of the statute as a matter of law.
A large group of concerned parents, members of an ad hoc organization called "Parents for Decency Through Law”, rigorously oppose the motion to dismiss. They attended the initial court hearing and have submitted numerous exhibits and legal memoranda to the court along with 170 letters of complaint from parents and local organizations opposed to the public display of the "cards” in question which they contend are sexually explicit and violative of the statute which prohibits the unrestricted public display of sexually offensive material as defined in Penal Law § 245.10.
The nine cards in question, submitted at the hearing, measure 7 inches by 5 inches and are glossy technicolor cards in most of which bare buttocks are featured and highlighted. Several of the cards consist of close-up shots of rear views of females, some with nylons and garter belts and others without these accessories, fetchingly posed with messages inside some of the cards. One card has a side view of a tall muscular smiling man taking a shower with his bare buttocks exposed. Another depicts a man and woman apparently naked but with a covering over her breasts and their genitals. One depicts a rear view of a female, whose legs and buttocks are encased in seamed transparent nylon mesh. She is being held by a man with hairy arms who is standing upright with one hand grasping each of her exposed buttocks. But, as in most of the cards, their faces are not visible since most of the card space is primarily focused on the area of the exposed buttocks. Another card depicts an apparently naked female standing upright in a jail cell. The cell bars cover her nipples and the aperture for the cell lock is lined up over her genitals. The darkened area immediately above the aperture is suggestive of pubic hair, especially at first glance, but could be a skillfully created photographic allusion. Her face is not visible but the breast area appears bathed in light, as opposed to the genital *890 area aforementioned. Facially the cards depict "nudity” and "sexual conduct” as those terms are defined in Penal Law § 245.10.
Defendant is the manager of the Happy Times Store located on the ground floor of the very heavily trafficked Nanuet Mall Shopping Center. The store is listed in the NYNEX Yellow Pages under "toy stores” and carries Teddy bears, Disney merchandise, stickers, balloons and other gift merchandise and appears to cater to children and teen-agers. This fact does not appear to be an issue.
Defendant contends that the information is defective. The court does not agree. Every defect in an accusatory instrument is not jurisdictional (People v Key, 45 NY2d 111; People v Trendell, 61 NY2d 728). Insufficiency in factual allegations is not a jurisdictional defect (People v Grosunor, 109 Misc 2d 663; People v Toodles, 81 AD2d 768).
Penal Law § 245.11 prohibits the display of sexually offensive material in places accessible to members of the public without fee or other limit of condition of admission such as a minimum age requirement. The purpose of section 245.11 is to prohibit the unrestricted public display of sexually offensive material which is defined in Penal Law § 245.10.
In 1985 the statute was amended to include the interiors of premises to which the public has unconditioned access and a key objective was to protect minors against viewing pornography which might be thrust upon them indiscriminately in public places and/or other members of the public from unintentionally viewing such materials. (See, L 1985, ch 231, § 1, eff Nov. 1, 1985.)
The amendment was designed to cover places which are essentially public places. It was thought that in many respects, store aisles are really extensions of the street since children and others are free to enter or depart as they please. Therefore, it was thought the prospective concerns underlying the prohibition against permitting the display of sexually offensive pictures or visual depictions should apply in equal force to places freely accessible to minors and unconsenting adults. Many courts, in construing public indecency statutes have held that a public place is defined by persons who would or could see the act rather than the place where the act was committed. (See, memorandum of Attorney-General submitted in support of the bill amending the statute.)
The statute regulates constitutionally protected material. *891 The Legislature sought to place reasonable prohibitions upon the public display and/or pictorial representation of sexually explicit material and the compelling interest of the State in safeguarding the physical and psychological well-being of minors was one justification for its enactment (New York v Ferber, 458 US 747).
The Legislature sought to avoid the insoluble difficulties encountered in potentially inhibiting access to literary materials based on a subjective assessment of their contents by limiting their concern to pictorial or visual materials as opposed to content-oriented material. The Legislature does, of course, have the power to make moral as well as social judgments. (People v Onofre, 51 NY2d 476, 494.)
Such judgment was implemented by enactment of laws proscribing the promotion of obscene materials. The underlying social and moral purpose of New York’s restriction upon the promotion of obscenity was highlighted by Judge Scileppi, when he stated: "It is regrettable that freedom of expression— one of our most cherished liberties — is perverted by those who profit from the salacious and obscene at the expense of decency and morality, as a spurious rallying cry to defeat the high purpose contained in our obscenity laws. Obscenity is striking a telling blow at community decency and morality everywhere with impunity” (Scileppi, Obscenity and the Law, 10 NY L F 297, 305 [1964]).
The Supreme Court has recognized that there exists a qualitative distinction between the visual depiction of sexual conduct and the printed description of such conduct (New York v Ferber, supra). A State has a heightened interest in the regulation of the photographic portrayal of sexual materials since the visual depiction presents a real potential for physical and psychological harm. It seems that the scope of permissible State regulations significantly increases as the mode of expression moves from the printed page to the visual or pictorial representation of sexually explicit material. Our courts have consistently recognized the State’s legitimate interest in attempting to stem the tide of commercializing obscenity (see, e.g., Paris Adult Theatre I v Slaton, 413 US 49; Miller v California, 413 US 15; Kois v Wisconsin, 408 US 229; Jacobellis v Ohio, 378 US 184; Roth v United States, 354 US 476). Threading through the cases which have developed the law on obscenity is an awareness, sometimes articulated, sometimes implied, that the rights and interests other than those of the litigants must be protected. These include the interests of the *892 community in the quality of life in which we all participate and the tone of the societal atmosphere which we must of necessity share.
Even more compelling than the State’s interest in regulating the dissemination of obscenity to the public at large is its interest in protecting children from the onslaught of sexually offensive material. The State may " 'exercise its power to protect the health, safety, welfare and morals of its community by barring the distribution to children of books recognized to be suitable for adults’ ” (Ginsberg v New York, 390 US 629, 636). The well-being of children is a subject long recognized as within a State’s constitutional power to regulate, particularly in relation to sexual matters (Ginsberg v New York, supra). This public concern for the welfare of children might well restrict what otherwise would be constitutionally protected conduct. It has been categorically stated by the court that obscene material is unprotected by the 1st Amendment. Obscene material has no constitutional sanction or protection. (Kois v Wisconsin, 408 US 229 [1972], supra.) The 1st and 14th Amendments have never been treated as absolutes. (Breard v Alexandria, 341 US 622.) In Bookcase, Inc. v Broderick (18 NY2d 71), the court upheld as valid a prohibition on the dissemination of sexually explicit material to minors, relying on Mishkin v New York (383 US 502). The court found that the "concept of obscenity or of unprotected matter may vary according to the group to whom the questionable material is directed or from whom it is quarantined” (18 NY2d, at p 75). The concept of "variable obscenity” in Bookcase (supra) was adopted by the Supreme Court in Ginsberg v New York (supra) and assessed the obscenity of material relative to minors on the basis of its appeal to them. This test states that what may be constitutionally protected for adults is not necessarily protected for children. (People v Kahan, 15 NY2d 311, 312 [1965].)
In Miller (supra) the court provided the current definition of obscenity to determine if material is obscene and therefore unprotected obscenity: "(a) whether 'the average person, applying contemporary community standards’ would find that the work, taken as a whole, appeals to the prurient interest * * * (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.” (413 US, at p 24.) The court held that to regulate materials as *893 obscene, the regulation must be limited to works which, "taken as a whole, do not have serious literacy, artistic, political, or scientific value” (413 US, at p 24; emphasis added). One of the criteria articulated in Miller (supra) is whether the material as a whole appeals to prurient interest in sex has been tracked and incorporated into the statute.
The People contend that the material before the court does not, as a matter of law, predominately appeal to prurient interest in sex. In Miller (supra), the court stated that "contemporary community standards” could be applied in determining whether material appeals to "prurient interest” or is "patently offensive” but expressly declined to formulate a national standard and instead left open the question as to whether the "contemporary community standard” could be based upon either a local or State-wide standard (413 US, at p 24). The New York Legislature in both the obscenity and public display enactments has not defined the standard but the New York Court of Appeals has ruled that the "contemporary community standard” to be applied in obscenity cases is a "State standard”. (People v Heller, 33 NY2d 314, 322; People v Calbud, Inc., 49 NY2d 389.) The fact that the New York Court of Appeals has adopted a State standard in obscenity cases does not necessarily mean that a State standard must be applied in a statute prohibiting the public display of sexually offensive nonobscene material. If all that the State could prohibit from public display was obscene material, there would be no need for this statute since such activity is already prohibited (Penal Law § 235.05). This is not an obscenity statute but a statute dealing with offenses "against public sensibilities”.
Nevertheless, the State-wide standard in obscenity cases was adopted to obviate censorship by local authorities who would, otherwise, be free to formulate their own notions of what constitutes obscenity if local community standards could be applied.
This statute sought to interdict the public display of sexually explicit pictorial or other visual representations, a limited range of materials, and the power of governments to regulate otherwise constitutionally protected material is broadest where the regulation is designed to protect minors or unconsenting adults from sexually offensive material. (Federal Communications Commn. v Pacifica Found., 438 US 726 [1978].) (The statute prohibiting broadcast of indecent, nonobscene *894 language upheld [Young v American Mini Theatres, 427 US 50].)
Given the limited objectives of the statute, it may not be necessary to analyze it within the framework of conventional obscenity criteria. It might be possible to analyze the statute in terms of a time, place and manner regulation. Reasonable time, place and manner regulations are permissible where the regulations are necessary to further significant governmental interests (Young v American Mini Theatres, supra).
In Young (supra) the regulation was content-based but upheld because the city had a sufficient interest in preserving the quality of urban life and the ordinance did not suppress or greatly restrict access to lawful speech. The Legislature must have felt that this display provision was justified by the substantial governmental interest in protecting minors from exposure to certain types of sexually explicit material. Recently the US Court of Appeals for the 10th Circuit upheld a city ordinance prohibiting promotion of sexually oriented material to minors and held that the ordinance prohibiting promotion of such material did not constitutionally expand the definitions of obscenity. (M.S. News Co. v Casado, 721 F2d 1281 [1983].) A similar result was reached in the US Court of Appeals for the 8th Circuit in the case of Upper Midwest Book Sellers Assn. v City of Minneapolis (780 F2d 1389 [1985]) wherein an ordinance regulating the manner in which certain sexually explicit material termed harmful to minors is displayed for sale was upheld (but see, Tattered Cover v Tooley, — Col —, 696 P2d 780). There, the court held that, although content-based regulation usually is proscribed, some content-based time, place or manner restrictions have been approved by the Supreme Court. (Citing New York v Ferber, 458 US 747 [1982], supra; Federal Communications Commn. v Pacifica Found., 438 US 726 [1978], supra; Young v American Mini Theatres, 427 US 50 [1976], supra.) Even though the regulation mandated by the Minneapolis ordinance was a content-based time, place or manner restriction impinging upon the rights of adults, it was upheld as a reasonable means of attempting to control the merchandising to minors of sexually explicit material, obscene as to them. In the past month, the Supreme Court of the United States upheld a constitutional challenge to a zoning ordinance finding the ordinance not to be violative of the 1st Amendment, holding that the intent of the ordinance was to preserve the quality of life and not the *895 suppression of unpopular views. (City of Renton v Playtime Theatres, 475 US —, 89 L ed 2d 29.)
While the legislative intent clearly indicates this statute was designed to protect minors as well as other unconsenting adults, it does not, by its terms, include a "harmful to minors” provision, although it does extend its prohibition to places "accessible to members of the public without fee or other limit or condition of admission such as a minimum age requirement” (Penal Law § 245.11).
The absence of any requirement that the material be "harmful to minors” was bound to be a fatal defect in Calderon v City of Buffalo (61 AD2d 323). The display provision there dealt with an obscenity ordinance by definition. The court is also mindful of the fact that courts have invalidated overbroad statutes regulating the display of sexually explicit material where adult access to material is effectively suppressed or alternative access is not provided (Rushia v Town of Ashburnham, 582 F Supp 900; Butler v Michigan, 352 US 380). Even the zoning ordinance cases do allow for adult access in certain areas, Renton (supra) and Young (supra).
If this statute is viewed as a public display restriction on sexually explicit nonobscene material it need not be analyzed in terms of a "harmful to minors” or "obscenity” or "zoning” standard and as such, it would not have to track those standards.
In People v Lou Bern Broadway (68 Misc 2d 112, revd on other grounds 32 NY2d 816 [1973]), the owner of a 42nd Street movie theatre placed a large photograph (almost life-size) of a nude female in a prone position with her buttocks exposed and visible outside of his theatre along with some other photographs of females, apparently nude, with opaque or translucent covering of buttocks and breasts. In that case the trial court found this statute to be constitutional and convicted the defendant after trial. That determination was unanimously affirmed by the Appellate Term, First Department (73 Misc 2d 497). However, the New York Court of Appeals, in a memorandum, reversed and dismissed. The court stated "[assuming, without deciding, the power of the State to regulate public displays short of obscenity, we conclude that the displays, in this case, as a matter of law, do not fall within the proscription of the statute” (32 NY2d, at p 817). The court never reached the constitutional question. Nor will this court presume to do so. An exceedingly strong presumption of *896 constitutionality applies to legislative enactments and unconstitutionality must be demonstrated beyond a reasonable doubt by a defendant (People v Pagnotta, 25 NY2d 333). Particularly, courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases where life and liberty is involved and the invalidity of the act is apparent on its face. (National Psychological Assn. For Psychoanalysis v University of State of N. Y., 18 Misc 2d 722, 725-726, affd 10 AD2d 688, affd 8 NY2d 197, appeal dismissed 365 US 298.) A more tightly drawn statute incorporating defined "harmful to minors” criteria which also enumerated "alternative adult access” might be desirable but the conduct proscribed in sections 245.10 and 245.11 is anatomically precise and does not run afoul of the due process requirement of fair notice.
It does not necessarily follow that a statute designed to reach sexually offensive nonobscene material would have to track the obscenity display criteria of 42nd Street which has the dubious distinction of being the pornography capital of the world. If that were the case, then the lowest common denominator would become the "standard” for a statute which sought to expand, not delimit, the scope of the sexually offensive material it regulates.
Perhaps the court may wish to analyze this statute in terms of an "offensive” violation of privacy theory since it is a public sensibilities statute designed to prevent sexually offensive material from being thrust upon people indiscriminately against their will. In Gluck v County of Los Angeles (93 Cal App 3d 121, 155 Cal Rptr 435) the Court of Appeals for the Second District in interpreting an ordinance that did not deal with obscenity, held the enactment must be tested against the delineation of permissible time, place and manner regulation. In upholding the ordinance, the court looked to the " 'whole purpose and scope of the legislative scheme’ ” and found speech which exploits sexually explicit content is subject to some regulation although the speech stops short of obscenity. (Supra, p 131, p 440; Erznoznik v City of Jacksonville, 422 US 205, 207.)
Nevertheless, this court cannot rewrite the statute in the guise of interpretation nor can it ignore the sweeping authoritative language of the highest court in this State in the Lou Bern case (supra) wherein the New York Court of Appeals held as a matter of law, that the life-size photograph of a nude female in a prone position with her buttocks exposed and *897 clearly visible from the center of Broadway did not fall within the proscription of the statute. Since the Court of Appeals held that the display of "nudity” in that case did not violate the statute as a matter of law, this court, which is bound by that ruling, must rule that the cards merely depicting rear "nudity” must be dismissed as a matter of law and, accordingly, grants the motion with respect to those eight exhibits. This court is painfully aware of the fact that 42nd Street and a suburban toy store are worlds apart, both geographically and in terms of their prospective clientele, but cannot rewrite the statute to incorporate local standards or ignore the dispositive language of the Court of Appeals which construed this very statute in the Lou Bern case (supra).
Nevertheless, the court does not find the language in Lou Bern (supra) dispositive with respect to the card which depicts the man fondling the bare buttocks of the female in the transparent nylon mesh stockings. The court finds this card to be erotic and cannot say as a matter of law that it does not appeal to prurient interest. Aside from the fact it seems bizarrely out of place in a "toy store”, it depicts highly suggestive sexual conduct between a barely clad female and judging by the hairy arms holding her bare buttocks, a man. Unlike the photograph in Lou Bern (supra), where the solitary figure of a female was displayed, this card features a man and woman together. It appears she is only wearing flimsy transparent nylon mesh stockings and he has his arms around her, holding her clearly visible buttocks, in his hands. This is a highly sensual, erotic picture bluntly suggestive of dynamic sexual conduct between the parties. It invites, even commands, one to consider the imminence of further sexual conduct since the hands are grasping or holding the buttocks and their bodies are clearly pressed against each other. The scantily clad provocative attire of the faceless female is perhaps more sensual than the unclad female form.
This court cannot say, as a matter of law, that this picture does not appeal to prurient interest and, accordingly, denies the motion with respect to this exhibit.